ATTORNEY GENERAL, *ex rel.* EAVES, *v.* STATE BRIDGE
                                   COMMISSION.

1. STATUTES—CONSTITUTIONAL LAW—GENERAL OR LOCAL ACTS—
   PUBLIC WORKS—INTERNATIONAL BOUNDARIES—BRIDGES—FERRIES.
   Scope of statute embracing, but not limited to, operation and
   maintenance of a bridge over, and ferries across, river form-
   ing a portion of the international boundary line *held*, not
   violative of provisions of Constitution prohibiting enactment
   of local or special acts where a general act can be made
   applicable and requiring approval of local or special acts
   by majority in electorate affected (Const. 1908, art. 5, § 30;
   art. 8, § 26; Act No. 147, Pub. Acts 1935).

2. HIGHWAYS AND STREETS—INTERNATIONAL BRIDGE—INTEREST OF
   STATE.
   Erection of bridges, which are essential parts of highways, is
   not a matter of purely local concern and international bridge,
   as to which there is evidence showing it to be on route across
   this State that is 50 miles shorter than by other roads, is of
   statewide concern.

3. MUNICIPAL CORPORATIONS — OBLIGATIONS OF REVENUE-PRODUCING
   PUBLIC WORKS—DEBT LIMITS.
   Municipal obligations which are not payable from taxes but are
   payable solely from revenues of an independent revenue-
   producing asset or utility, do not constitute a debt of the
   municipality, within the prohibition of a constitutional or
   statutory debt limit (Const. 1908, art. 10, §§ 10, 11).

4. STATES—OBLIGATIONS OF REVENUE-PRODUCING PUBLIC WORKS—
   STATUTES—SEVERING CLAUSE.
   While statute providing for issuance of bonds upon revenue-
   producing public works projects, including erection and opera-
   tion of bridge over international boundary, and for payment
   therefor solely from revenues produced therefrom and declar-
   ing such bonds to be lawful investments in the same manner
   and to the same extent as other bonds of the State may not be
   construed unconstitutional *in toto* because of severing clause,
   such bonds are not bonds of the State nor are they lawful
   investments in the same manner and to the same extent as
   other bonds of the State (Const. 1908, art. 10, §§ 10, 11;
   Act No. 147, Pub. Acts 1935).

5. Constitutional Law—Internal Improvements—International Bridges—Statutes.

> Constitutional prohibition to State being a party to or interested in works of internal improvement, except in the improvement of, or aiding in the improvement of, public wagon roads, *held,* not to forbid statute authorizing issuance of bonds by the State to be paid solely from revenues received from bridge and ferries across river forming a part of the international boundary (Const. 1908, art. 10, § 14; Act No. 147, Pub. Acts 1935).

6. Highways and Streets—International Bridge Approach—State Highway Funds.

> Use of State highway department funds for purchase of a right of way and one-half the cost of constructing American approach to bridge over river on international boundary *held,* not an improper expenditure of money where additional legislative appropriation or anticipation of funds is represented as unnecessary (Const. 1908, art. 10, §§ 14, 16).

7. Constitutional Law—State Credit—State Bridge Commission.

> Act providing for organization of State bridge commission, empowering it to sue or be sued, to contract, to have a common seal and issue bonds to be paid for from revenues *held,* not unconstitutional as an unauthorized lending of credit to public corporation (Const. 1908, art. 10, § 12, art. 12, § 1; Act No. 147, Pub. Acts 1935).

8. Statutes—Object Expressed in Title—International Bridge.

> Title of act setting forth general object of act as acquisition, construction, operation and maintenance of certain public works and creation of a State bridge commission *held,* sufficient to express subject matter set forth in body of the act involving erection and operation of international bridge (Const. 1908, art. 5, § 21; Act No. 147, Pub. Acts 1935).

9. Same—Purpose of Title.

> A title of an act is but a descriptive caption, directing attention to the subject matter which follows.

10. Same—Constitutional Law—Expression of Object in Title.

> If an act centers to one main general object or purpose which the title comprehensively declares, though in general terms, and if provisions in the body of the act not directly mentioned in the title are germane, auxiliary, or incidental to that general purpose, the constitutional requirements that no law shall embrace more than one object which shall be expressed in its title, is met (Const. 1908, art. 5, § 21).

11. CONSTITUTIONAL LAW—STATE BRIDGE COMMISSION—INTERIM APPOINTMENT—SENATE.

Under statute creating a State bridge commission and requiring that members be appointed by the governor with the advice and consent of the senate, interim appointees are assumed to have all powers granted by the act until senate passes adversely upon such appointments, since it is not to be presumed legislature intended the act to remain in suspension until their next session (Act No. 147, Pub. Acts 1935).

12. OFFICERS—LEGAL CAPACITY—COLLATERAL ATTACK.

Question of legal capacity of interim appointees of State bridge commission *held,* not one which may be raised in a collateral manner such as by taxpayer's suit to enjoin their issuance, sale and delivery of bridge bonds (Act No. 147, Pub. Acts 1935).

ON MOTION FOR RECONSIDERATION.

13. STATES—OBLIGATIONS OF REVENUE-PRODUCING PUBLIC WORKS—CREDIT OF STATE.

Bonds issued by State bridge commission payable solely from revenues from operation of bridge and ferries over international boundary do not directly, indirectly or contingently obligate the State to levy or collect taxes or to make any appropriation for their payment and in case of default, the good faith of the State will not be affected, the bondholders being bound by the statute under which the bonds were issued (Const. 1908, art. 10, § 12; Act No. 147, Pub. Acts 1935). WIEST, J., dissenting.

Appeal from St. Clair; George (Fred W.), J. Submitted July 16, 1936. (Docket No. 118, Calendar No. 39,084.) Decided October 5, 1936. Rehearing denied November 9, 1936. Reconsideration denied December 9, 1936.

Bill by David H. Crowley, Attorney General of the State of Michigan, on the relation of William C. Eaves, against State Bridge Commission, consisting of Varnum B. Steinbaugh and others, and Murray D. Van Wagoner, State Highway Commissioner, to restrain the issuance, sale and delivery of certain

bridge bonds authorized by Act No. 147, Pub. Acts 1935. Bill dismissed. Plaintiff appeals. Affirmed.

*Avery & Covington,* for plaintiff.

*George C. Watson,* for defendants.

Bushnell, J. The parties agree upon the facts and the questions involved.

The State bridge commission created by Act No. 147, Pub. Acts 1935 is authorized to acquire, improve, construct, operate and maintain certain specified public works, which, by definition in the act, shall include ''all property, rights, easements and franchises relating thereto and deemed necessary or convenient for their operation and shall embrace an international bridge over and ferries across the St. Clair river at or near Port Huron.''

The commission has entered into a contract for the sale of revenue bonds of the State, payable only from tolls to be earned by the completed bridge, for the purpose of purchasing the Port Huron-Sarnia Ferry Company, paying the cost of constructing the main span of the international bridge and acquiring the franchise of the St. Clair Transit Company to construct that part of the main span which crosses Canadian waters, the Canadian company being authorized to construct, maintain and operate the Canadian portion of the proposed bridge and to fix and charge tolls for transit.

The controlling Canadian laws are Statutes of Canada for 1928, chap. 64, as amended by chap. 59 of 1930 and chap. 65 of 1934, 24-25 George V.

The act of congress which grants Federal consent to the crossing of navigable waters is Public Act No. 411, approved August 30, 1935 (49 U. S. Stat. at Large, chap. 833, § 17, p. 1067).

The several acts require rates of tolls sufficient to pay the reasonable costs of maintenance, repairs

and operation, and provide for the amortizing of the costs of construction; thereafter the rates shall only provide for maintenance, repairs and operation.

The amount of the bond issue required for the purchase of the existing ferry and the construction of the main span is estimated at $1,900,000. The estimated cost of the Michigan approach is $629,000, of which $119,000 is for the right of way. The cost of the Canadian approach, $635,000, will be paid by the province of Ontario and the dominion government. The cost of the American approach is to be borne equally by the State and national governments, and the right of way is to be paid for by the State highway department. The money contributions of the State of Michigan and province of Ontario are not to be repaid out of tolls.

The proposed plans show a main span of 1,490 feet, with the American and Canadian approaches 2,352 and 2,550 feet respectively.

Plaintiff, a taxpayer, who sought to enjoin the issuance and delivery of the proposed bonds, appeals from the denial of an injunction. He argues that the Michigan act violates the State Constitution and that the members of the commission have not been appointed as required by the act.

Constitution of 1908, art. 8, § 26, states that

"The legislature may by *general law* provide for the laying out, construction, improvement and maintenance of highways, *bridges* and culverts by the State," etc.

Appellant says the act in question is local and special in character. Article 5, § 30, which was recently considered in *City of Dearborn* v. *Wayne County Board of Supervisors,* 275 Mich. 151, reads:

"The legislature shall pass no local or special act, in any case where a general act can be made ap-

plicable, and whether a general act can be made applicable shall be a judicial question. No local or special act, excepting acts repealing local or special acts in effect January one, nineteen hundred nine and receiving a two-thirds vote of the legislature shall take effect until approved by a majority of the electors voting thereon in the district to be affected.''

The bridge in question is international in character and will be used by those from all parts of both nations who desire to enter or leave the United States through Port Huron. Its only so-called local characteristic is that its American approach is at Port Huron. If the act in question were deemed to be local or special in its nature, what limits should have been placed by the legislature upon those who should vote upon the question? Can those who live in Wayne county and who use the Port Huron gateway be said to be unaffected? Assuming that the act is to be construed as a local or special act, what district is affected and how shall its limits be determined? Is it the city of Port Huron? Are nearby cities and villages to be excluded? To state the question is to give the answer. So far as the State of Michigan is concerned, practically all of its citizens are affected directly or indirectly by the means of ingress and egress at Port Huron just as they are at the city of Detroit. The geography of Michigan requires all of its citizens to be particularly interested in transportation across, over and under the waters of the State, otherwise they might remain without means of vehicular transportation except to the south and west.

The scope of the act is not limited to an international bridge and ferries at or near Port Huron although it does embrace such objects.

The deputy State highway commissioner, who is also chairman of the bridge commission, testified

that the report of the State planning commission recommended this location for the construction of an international bridge. He said that this route from Chicago to points on the Atlantic seaboard is nearly 50 miles shorter than by other roads.

Bridges are essential parts of highways and as said in *Moreton* v. *Secretary of State,* 240 Mich. 584:

"If ever the building and maintenance of highways was a matter of purely local concern, that time passed with the coming of the automobile into general use as a means of transportation. Good roads became economically necessary. To secure them, the old local public road policy was abandoned; and by appropriate legislation there was adopted a complete and comprehensive statewide system, the basic theory of which is that the building of a highway in any section of the State is of interest to every other section; that it is a matter of statewide concern rather than of any particular locality. * * * The extent of the territory to which it (the appropriation) is applied, whether to a limited area or to the entire territory of the State, would seem to furnish a reasonably accurate test as to whether it is for general or local purposes."

The act is neither local nor special in character and therefore does not offend the constitutional sections quoted.

Appellant says the act contravenes Constitution of 1908, art. 10, §§ 10, 11, which are as follows:

"SEC. 10. The State may contract debts to meet deficits in revenue, but such debts shall not in the aggregate at any time, exceed two hundred fifty thousand dollars. The State may also contract debts to repel invasion, suppress insurrection, defend the State or aid the United States in time of war. The money so raised shall be applied to the purposes for which it is raised or to the payment of the debts contracted. The State may borrow not to

exceed fifty million dollars for the improvement of highways and pledge its credit, and issue bonds therefor on such terms as shall be provided by law.''

''SEC. 11.   No scrip, certificate or other evidence of State indebtedness shall be issued, except for such debts as are expressly authorized in this Constitution.''

It is suggested that this phase of the case is one of first impression in this State. If the proposed bonds are an obligation of the State, the act is unconstitutional and their issuance should be enjoined. The act provides, section 8:

''The commission is hereby authorized to provide by resolution for the issuance of revenue bonds of the State for the purpose of paying the cost as hereinabove defined of any one or more public works which said commission is authorized by this act to acquire or construct, which resolution shall recite an estimate of such cost. *The principal and interest of such bonds shall be payable solely from the special fund herein provided for such payment.* * * * *All bonds issued under this act shall contain a statement on their face that the State shall not be obligated to pay the same or the interest thereon except from the revenues of the works.*''

The subject of self-liquidating public works has recently received our consideration in *Young* v. *City of Ann Arbor,* 267 Mich. 241; *Block* v. *City of Charlevoix,* 267 Mich. 255, and *Gilbert* v. *Traverse City,* 267 Mich. 257. We shall not repeat that which we have so recently stated.

Appellant contends for the rule that the bonds in question are an evidence of State indebtedness.

A recent Arizona case states that:

''Three rules have resulted which are, together with the case supporting them, stated by the court in *State* v. *City of Miami,* 113 Fla. 280 (152 South.

6, 9). The cases cited are so numerous they seem exhaustive of the subject. We give the rules as stated by that court omitting the cases:

" 'There is respectable authority (perhaps the weight of authority is to this effect) which affirms the proposition that municipal obligations, which are not payable from taxes, but are provided to be payable solely from the revenues of an independent revenue-producing asset or utility, do not constitute a debt of the municipality, within the prohibition of a constitutional or statutory debt limit.' (Citing cases.)

" 'Other cases limit the doctrine to those obligations only which do not undertake to pledge any of the existing revenues of a plant or other revenue-producing asset *in esse,* while some of the cases hold that the foregoing distinction is not applicable to obligations for extension and additions, when made payable from the gross income of the enlarged plant or other revenue-producing asset of the municipality.' (Citing cases.)

" 'A third group of cases refuses to acknowledge any such distinction at all. The last mentioned group holds that to permit a city to borrow any money under a contractual device for its repayment with interest, even though it is expressly provided therein that the municipality shall not be liable generally for its repayment, but that the lender shall look solely to pledged municipal property or assets, or the income thereof, as security, in effect annuls the intended constitutional, or statutory, restriction on municipal improvidence, and is therefore void as an indirect attempt to strike down an intended safeguard against municipal profligacy. These cases regard any form of revenue anticipation borrowing as an unlawful attempt to circumvent the debt or borrowing restrictions of the statute or Constitution, which are to be regarded as intended for the purpose of forbidding imposition of additional burdens on the taxpayer, either by diverting funds which must be replenished by other funds raised by taxation if so used, or otherwise made up out of moneys which would be available for reducing taxation if not diverted.' (Citing cases.)" *Board of Regents* v. *Sullivan,* 45 Ariz. 245 (42 Pac. [2d] 619, 624).

See, also, *Alabama State Bridge Corp.* v. *Smith,* 217 Ala 311 (116 South. 695); *Connor* v. *Blackwood,* 176 Ark. 139 (2 S. W. [2d] 44); *California Toll Bridge Authority* v. *Kelly,* 218 Cal. 7 (21 Pac. [2d] 425); *Bates* v. *State Bridge Commission,* 109 W. Va. 186 (153 S. E. 305); *Estes* v. *State Highway Commission,* 235 Ky. 86 (29 S. W. [2d] 583); *Tranter* v. *Allegheny County Authority,* 316 Pa. 65 (173 Atl. 289); *Brazos River Conservation and Reclamation District* v. *McGraw,* 126 Tex. 506 (91 S. W. [2d] 665); and annotations in 72 A. L. R. 687 and 100 A. L. R. 900.

Unless we desire to overrule the implications of *Young* v. *City of Ann Arbor, supra,* and the companion cases cited *supra,* we should follow the majority rule stated in the quotation from the *Arizona Case.*

"The overwhelming weight of judicial opinion in this country is to the effect that bonds, or other forms of obligation issued by States, cities, counties, political subdivisions or public agencies by legislative sanction and authority, if such particular bonds or obligations are secured by and payable only from the revenues realized from a particular utility or property, acquired with the proceeds of the bonds or obligations, do not constitute debts of the particular State, political subdivision or public agency issuing them, within the definitions of 'debts' as used in the constitutional provisions of the States having limitations as to the incurring of indebtedness." *California Toll Bridge Authority* v. *Wentworth,* 212 Cal. 298, 302 (298 Pac. 485).

The present revenue of the State is not affected or diverted and its general indebtedness is not increased. The proposed bonds do not impose either a direct or indirect burden upon taxpayers; they are not obligations of the State of Michigan and the credit of the State is not pledged.

While the question is not argued, appellant's brief contains the following statement:

"It will be noted that under Act No. 147, § 8, Pub. Acts 1935:

" 'Such bonds shall be exempt from all taxation, State, county and municipal, and unless otherwise provided by law, shall be lawful investments in the same manner and to the same extent as other bonds of the State.' "

We have serious doubt of the power of the legislature to make such a declaration and were it not for the severance clause in the act, the language of this section might require a holding that the entire

act is bad. These obligations are not bonds of the State and therefore cannot be lawful investments in the same manner and to the same extent as other bonds of the State.

Constitution 1908, art. 10, § 14, says:

"The State shall not be a party to, nor be interested in any work of internal improvement, nor engage in carrying on any such work, except in the improvement of, or aiding in the improvement of, the public wagon roads, in the reforestation and protection of lands owned by the State and in the expenditure of grants to the State of land or other property."

We held in *Gilbert* v. *City of Traverse City, supra,* that a self-liquidating project was not prohibited by the foregoing section of the Constitution.

It is a fundamental and familiar proposition of law that the State may not do indirectly that which it is forbidden to do directly.

Section 16 of the same article of the Constitution provides:

"No money shall be paid out of the State treasury except in pursuance of appropriations made by law."

If it is contemplated that the bridge bonds will be transferred or sold to the State to be paid for by moneys owned or controlled by the State and the project will in this manner be indirectly financed by the State, such transaction might, upon proper showing, be held void.

"The Constitution does not permit the State either to contract a debt for a public improvement, or to expend in its construction anything but the grants which it has received for the purpose, and any legislation which attempts any other expenditure must be directly within the Constitutional inhibition, and, therefore, void." *Ryerson* v. *Utley,* 16 Mich. 269,

275, except for public roads, etc., as provided in article 10, § 14, *supra*.

Certain funds are to be provided by the State highway department for the purchase of a right of way and one-half of the cost of constructing the American approach. It is represented to us that such moneys are now available without additional legislative appropriation or the anticipation of funds. We cannot see any difference between the use of moneys for such purposes and the improvement or construction of approaches to existing international gateways.

Because of the nonliability of the State, we adhere to the implications of *Young* v. *City of Ann Arbor, supra,* and hold that the act does not violate the debt limitation provisions of the Constitution.

Constitution 1908, art. 10, § 12, says:

"The credit of the State shall not be granted to, nor in aid of any person, association or corporation, public or private."

Appellant says that because the act provides that "the commission may sue and be sued; plead and be impleaded; contract and be contracted with and have a common seal" that the legislature has thereby authorized the lending of the credit of the State to a public corporation which it has created by special act in violation of the Constitution of 1908, art. 12, § 1. This argument is predicated on the premises that the State cannot issue the bridge bonds. Since the State does not issue its bonds or advance any money except highway funds for highway purposes and the act does not require the appropriation of funds or the lending of credit, the argument fails.

Appellant's remaining constitutional objection is that the title fails to express the subject matter set forth in the body of the act.

It is suggested that the public was not honestly informed by the title that the construction of an international bridge was authorized over the St. Clair river and that ferries might be acquired by the commission; that while the title indicates a program of public works, the body of the act does not provide such action, but merely the erection of a single bridge.

A similar argument was made in *Young* v. *City of Ann Arbor, supra.* We said in that case:

"It is contended the act violates article 5, § 21, of the Constitution which provides:

" ' 'No law shall embrace more than one object, which shall be expressed in its title.'

" (a) '.A title is but a descriptive caption, directing attention to the subject matter which follows.' *Loomis* v. *Rogers,* 197 Mich. 265.

" (b) 'If the act centers to one main general object or purpose which the title comprehensively declares, though in general terms, and if provisions in the body of the act not directly mentioned in the title are germane, auxiliary, or incidental to that general purpose, the constitutional requirement is met.' *Loomis* v. *Rogers, supra.* "

The general object of the act is "certain public works;" and a "State bridge commission" is created. One reading the title might have reason to suppose that the act included bridges and a reading of the act by one whose attention was challenged by the title would lead to information that the "works" embraced an "international bridge," etc.

The remainder of the statute is germane to its main object and the title does not offend the constitutional provision quoted. *Regents of University of Michigan* v. *Pray,* 264 Mich. 693, and *People* v. *Carroll,* 274 Mich. 451.

The question of the legal capacity of the members of the commission, although of slight consequence, can be answered by saying that although the act requires that these individuals be appointed by the governor with the advice and consent of the senate,

the advising and consenting body has not been in session since their appointment. It is only reasonable to assume that the appointees have all the powers granted by the act until such time as the senate may pass adversely upon the appointments. We cannot presume the legislature intended the act to remain in suspension until their next session.

In any event this question may not be raised in a collateral manner. *Carlton* v. *People,* 10 Mich. 250.

The decree is affirmed, with costs to appellees.

NORTH, C. J., and FEAD, WIEST, BUTZEL, and SHARPE, JJ., concurred. POTTER and TOY, JJ., did not sit.

### ON MOTION FOR RECONSIDERATION.

BUSHNELL, J. The opinion heretofore rendered is reaffirmed without change, the following being added thereto for the purpose of clarification.

The revenue bonds in question impose only a special or limited duty upon the State relating solely to the collection and application of revenues. The act (Act No. 147, Pub. Acts 1935) provides that the revenue bonds must contain a statement on their face that ''the State shall not be obligated to pay the same or the interest thereon except from the revenues of the works.'' The source of revenue for the payment of the bonds is only the income; there is no lien on the bridge or ferries. We reiterate the bonds do not directly, or indirectly, or contingently obligate the State to levy or to collect any form of taxation whatever therefor or to make any appropriation for their payment. *State and Diver* v. *City of Miami,* 113 Fla. 280 (152 South. 6). The bondholders are bound by the act and cannot look to the State for payment. *Bates* v. *State Bridge Commission,* 109 W. Va. 186 (153 S. E. 305). And if default should be made in the payment of the bonds, the good faith of the State will not be affected. *Klein* v. *City of Louisville,* 224 Ky. 624 (6 S. W. [2d] 1104).

NORTH, C. J., and FEAD, BUTZEL and SHARPE, JJ., concurred with BUSHNELL, J.

WIEST, J. (*dissenting*). I stand by the original opinion and, therefore, do not join in the expatiation.

POTTER and TOY, JJ., did not sit.