MID-MICHIGAN FARM AND GRAIN ASSOCIATION, INC v
HENNING

Docket No. 61546. Submitted April 8, 1983, at Grand Rapids.—Decided August 2, 1983.

Plaintiff, Mid-Michigan Farm and Grain Association, Inc., brought an action in the Clinton Circuit Court challenging the constitutionality of the Economic Development Corporations Act of 1974 (EDCA) in an attempt to enjoin the Clinton County Economic Development Corporation (EDC) from issuing financing documents to Westmac, Inc. Westmac had sought to finance a vast portion of the cost of a high-speed grain elevator and railroad loading facility in Eagle Township, Clinton County, Michigan, through tax-exempt EDC revenue bonds issued by the Clinton County EDC. The defendants in the action were Dyle Henning and Donald Lowell, respectively, in their capacities as President and Secretary of the Clinton County Economic Development Corporation, and Westmac, Inc. The trial court, Randy L. Tahvonen, J., found the EDCA to be constitutional and that the Clinton County Board of Commissioners did not commit an abuse of discretion in determining that Westmac's project satisfied a public purpose. The court also held that, while plaintiff did not have standing to maintain the action as a "taxpayer's suit", based on its claim that it would sustain a economic disadvantage from the proposed financing of the project, plaintiff had standing to seek a declaratory judgment regarding the constitutionality of the EDCA. Plaintiff appeals from the opinion and order to that effect raising several issues. *Held:*

1. The EDCA does not violate Const 1963, art 3, § 6 inasmuch

REFERENCES FOR POINTS IN HEADNOTES
[1, 3] 64 Am Jur 2d, Public Securities and Obligations § 110.
[2] 64 Am Jur 2d, Public Securities and Obligations § 85.
[4] 74 Am Jur 2d, Taxpayers' Actions §§ 16, 20.
[5] 16 Am Jur 2d, Constitutional Law § 188 *et seq.*
[6] 64 Am Jur 2d, Public Securities and Obligations §§ 100, 101.
[7] 16 Am Jur 2d, Constitutional Law § 226.

as financing under the act is accomplished through self-liquidating revenue bonds.

2. The EDCA, as implemented, does not deny equal protection to small businesses.

3. Since the self-liquidating bonds issued pursuant to the EDCA do not constitute an indebtedness of the state, a county or a municipality, their issuance does not affect plaintiff as a taxpayer. A tax waiver is not tantamount to an expenditure. Therefore, the trial court correctly held that plaintiff's action does not qualify as a taxpayer's suit.

4. The trial court correctly held that plaintiff was without standing to challenge the 1980 amendments to the EDCA. Plaintiff is not immediately affected by the alleged statutory defects.

5. The findings of the Clinton County Board of Commissioners and the Eagle Township Board that the grain elevator project fulfilled a public purpose were not palpably arbitrary and incorrect.

Affirmed.

1. CORPORATIONS — ECONOMIC DEVELOPMENT CORPORATIONS ACT — REVENUE BONDS — SELF-LIQUIDATING BONDS.

The revenue bonds issued pursuant to the Economic Development Corporations Act for the purpose of financing corporations are self-liquidating bonds; such bonds are not general obligation bonds and do not constitute an indebtedness of the state, a county or a municipality (MCL 125.1623; MSA 5.3520[23]).

2. CONSTITUTIONAL LAW — ECONOMIC DEVELOPMENT CORPORATIONS ACT — REVENUE BONDS — SELF-LIQUIDATING BONDS.

Financing under the Economic Development Corporations Act is accomplished through self-liquidating revenue bonds; therefore, the act does not violate the constitutional prohibition against state involvement in private internal improvements (Const 1963, art 3, § 6; MCL 125.1623; MSA 5.3520[23]).

3. CONSTITUTIONAL LAW — EQUAL PROTECTION — ECONOMIC DEVELOPMENT CORPORATIONS ACT.

The Economic Development Corporations Act, as implemented, does not deny equal protection of the law to small businesses (US Const, Am XIV; Const 1963, art 1, § 2).

4. PARTIES — STANDING — TAXATION — TAX WAIVERS — EXPENDITURES OF STATE FUNDS — TAXPAYERS' SUITS — ECONOMIC DEVELOPMENT CORPORATIONS ACT.

A tax waiver is not tantamount to an expenditure of state funds;

therefore, a taxpayer does not have standing pursuant to the statute regarding the prevention of illegal expenditures of state funds to bring a taxpayer's suit raising constitutional questions regarding tax-exempt self-liquidating bonds issued pursuant to the Economic Development Corporations Act which do not constitute an indebtedness of the state, a county, or a municipality since the issuance of such tax-exempt bonds does not affect the plaintiff as a taxpayer (MCL 125.1623, 600.2041[3]; MSA 5.3520[23], 27A.2041[3]).

5. Constitutional Law — Parties — Standing — Statutes.

A party cannot attack a statute on the ground that its application denies constitutional protection to others.

6. Corporations — Economic Development Corporations Act — Municipal Corporations — Public Purpose.

The Economic Development Corporations Act provides that a local municipality has the right and obligation to determine whether a specific project satisfies a public purpose (MCL 125.1610; MSA 5.3520[10]).

7. Constitutional Law — Public Purpose — Legislative Determination.

The determination of what constitutes a public purpose is primarily a legislative function, subject to review by the courts when abused; such a determination by a legislative body should not be reversed except in instances where the determination is palpably and manifestly arbitrary and incorrect.

*Douglas R. Ingles* for plaintiff.

*Warner, Norcross & Judd* (by *Peter L. Gustafson* and *Jeffrey O. Birkhold),* for Dyle Henning and Donald Lowell.

*Ward, Schenk & Boncher* (by *Gary P. Schenk),* for Westmac, Inc.

Before: Beasley, P.J., and R. B. Burns and T. C. Megargle,* JJ.

Per Curiam. On August 5, 1981, plaintiff, Mid-

---

* Circuit judge, sitting on the Court of Appeals by assignment.

Michigan Farm and Grain Association, Inc., started suit in the Clinton County Circuit Court challenging the constitutionality of the Economic Development Corporations Act of 1974 (EDCA).[1] From the trial court's opinion and order upholding the constitutionality of the act, plaintiff appeals as of right.

Plaintiff attempted to enjoin the Clinton County Economic Development Corporation (EDC) from issuing financing documents to defendant Westmac, Inc. In 1981, Westmac decided to construct a large high-speed grain elevator and railroad loading facility in Eagle Township, Clinton County, Michigan. The company sought to finance a vast portion of the cost through the tax-exempt EDC revenue bonds issued by the Clinton County EDC.

Enacted in 1974 and amended in 1980,[2] the EDCA is part of the comprehensive legislation relating to planning, housing, and zoning whereby the state is attempting to reduce unemployment, afford economic assistance to industries, assist the rehabilitation of blighted areas, and promote urban redevelopment. Section 2 of the act[3] provides:

"There exists in this state the continuing need for programs to alleviate and prevent conditions of unemployment, and the legislature finds that it is accordingly necessary to assist and retain local industrial and commercial enterprises to strengthen and revitalize the economy of this state and its municipalities; that accordingly it is necessary to provide means and methods for the encouragement and assistance of industrial and commercial enterprises in locating, purchasing, constructing, reconstructing, modernizing, improving, maintaining, repairing, furnishing, equipping, and expanding in this state and in its municipalities; and that

---

[1] MCL 125.1601 et seq.; MSA 5.3520(1) et seq.

[2] 1980 PA 501.

[3] MCL 125.1602; MSA 5.3520(2).

it is also necessary to encourage the location and expansion of industrial and commercial enterprises to more conveniently provide needed services and facilities of the industrial and commercial enterprises to municipalities and the residents of the municipalities. It is also necessary to promote economic activity in the forestry and agricultural sectors by providing incentives to combat inflation, to reduce energy consumption, to retain the family farm unit, to reduce the rate at which urban sprawl has been devouring our productive farm lands, and to provide our farmers and foresters with a more favorable export market; all this to be accomplished by reducing costs of production. It is also necessary to encourage the development of facilities designed to produce energy from renewable resources. Therefore, the powers granted in this act constitute the performance of essential public purposes and functions for this state and its municipalities."

In July of 1981, plaintiff was organized as a nonprofit corporation. One of its functions is to engage in efforts to protect the legal rights guaranteed to farmers and grain elevator operators by the Michigan and federal Constitutions.[4] Each of plaintiff's incorporators and directors has a principal share in a grain elevator business with which Westmac's project would compete.

In its constitutional challenge to the EDCA, plaintiff claimed, among other things, that its members would sustain irreparable injuries if the Clinton County EDC granted revenue bond financing to Westmac for the erection of the grain elevator project. Plaintiff claimed that Westmac would receive a competitive advantage as a consequence of the financing under the EDCA.

According to an affidavit submitted on August 20, 1981, by Donald Lowell, secretary of the Clinton County EDC, the development corporation was

---

[4] Plaintiff's Articles of Incorporation, Art II(b).

formed in 1977 to assist businesses proposing to establish enterprises in Clinton County by issuing tax-exempt bonds or notes. The principal and interest of the bonds and notes are payable exclusively from the proceeds of approved projects or any other security that the project owners grant to bondholders. Lowell claimed that Westmac's project (1) developed on unimproved land owned by Westmac in Eagle Township, was more than 50% complete, (2) would provide approximately five new jobs, and (3) would result in a new customer for area farmers wishing to sell harvested grain. Lowell also stated that since its formation in 1977, the Clinton County EDC approved the financing of six projects involving approximately $4 million in bonds, and that three pending projects, exclusive of Westmac's project, involve about $11 million in proposed EDC financing.

In a comprehensive, well-reasoned opinion, the trial court upheld the constitutionality of the EDCA and found that the Clinton County Board of Commissioners did not commit an abuse of discretion in determining that Westmac's project satisfied a public purpose. While holding that plaintiff did not have standing to maintain the action as a "taxpayer's suit", the trial court held that plaintiff, based on its claim that it would sustain an economic disadvantage from the proposed financing of the grain elevator project, had standing to seek a declaratory judgment[5] on the act's constitutionality.

On appeal, plaintiff raises several issues. First, it contends that § 6 of Article 3 of the 1963 Michigan Constitution, which prohibits state involvement in nonpublic internal improvements, applies to self-

[5] The court rule governing declaratory judgments is GCR 1963, 521. For a brief analysis of this rule, see *Demorest v DiPentima,* 118 Mich App 299, 302-303; 324 NW2d 634 (1982).

liquidating revenue bonds, the nature of the project's financing. The foregoing constitutional provision states:

"The state shall not be a party to, nor be financially interested in, any work of internal improvement, nor engage in carrying on any such work, except for public internal improvements provided by law."

MCL 125.1623; MSA 5.3520(23) provides that the revenue bonds used to finance corporations under the EDCA be self-liquidating. These bonds are not general obligation bonds and do not constitute an indebtedness of the state or a municipality.[6]

Like the trial court, we find that plaintiff's claim that the internal improvements clause of the Michigan Constitution applies to self-liquidating revenue bonds is without merit. In *City of Gaylord v Gaylord City Clerk*,[7] the Supreme Court reaffirmed that self-liquidating bonds do not violate the constitutional prohibition against state involvement in private internal improvements:

"Are the improvements for which bonds are to be issued works of internal improvement for private purposes prohibited by article 3, § 6, of the Michigan Constitution (1963)?

\* \* \*

"This prohibition, with modifications in language, was carried into the 1908 and 1963 Constitutions. Const 1908, art 10, § 14; Const 1963, art 3, § 6. It has been repeatedly held, however, that it does not include self-liquidating bonds because they do not obligate the general taxing power.

\* \* \*

---

[6] *Oakland County Drain Comm'r v Royal Oak,* 306 Mich 124, 142; 10 NW2d 435 (1943); *Attorney General ex rel Eaves v State Bridge Comm,* 277 Mich 373, 383; 269 NW 388 (1936).

[7] 378 Mich 273, 289-291; 144 NW2d 460 (1966).

"Whether the exception as to revenue bonds was approved or disapproved, it was a recognized fact. The delegates froze that exception into section 6 by their retention of substantially the same language which, in prior Constitutions, had been construed to allow it. See Const 1850, art 14, § 9; Const 1908, art 10, § 14.

"Defendant insists that we look at the plain language of the Constitution. It prohibits not only direct financial involvement by the State but also prohibits the State from being a 'party' to works of internal improvement. The State, through the city of Gaylord, is a 'party' but the prohibition against the State being a 'party' was present when this Court found an exception as to self-liquidating bonds. Const 1850, art 14, § 9; Const 1908, art 10, § 14. Since that exception was known to the delegates, in the absence of some specific limitation by them of the same, it must be considered still valid."

Therefore, inasmuch as financing under the EDCA is accomplished through self-liquidating revenue bonds, the act does not violate § 6 of Article 3 of the 1963 Michigan Constitution.

Second, plaintiff asserts that the EDCA violates the equal protection clauses of the Michigan and federal Constitutions by producing an anti-competitive effect and excluding small business concerns from deriving benefit thereunder. Plaintiff contends that small businesses are unable to satisfy the requirements of the act because exorbitant attorney fees must be expended to set up a proper bonding issue. Therefore, plaintiff reasons that since small businesses are unable to obtain financing under the EDCA, they are required to compete with larger firms which enjoy the competitive advantage ascribable, in part, to governmentally authorized and subsidized financing.

For the reasons set forth in the following passage from the trial court's opinion, we reject plain-

tiff's claim that the statute, as implemented, denies equal protection to small businesses:

"Defendant EDC is, of course, correct. But it seems wiser to the Court to accept as true the factual assertions made by plaintiff regarding the disparate effect the statute has in the business community. For, even if it is true that no project involving a financial commitment of less than $250,000 is cost-effective for EDC financing because of legal and other costs incurred by the owner, the statute is not constitutionally invalid in its application.

"First, as defendant EDC points out, there is a rational basis for disparate treatment of large and small businesses:

" 'Economic development is the object of the EDC Act. Also, it is conceivable that economic development can be accomplished only by, or is better accomplished by large businesses. Accordingly, even if EDC financing were effectively available only to large businesses, which defendants deny, equal protection would not be denied to small businesses. The classification between large and small businesses would be reasonably related to the object of the EDC Act, and would not be "essentially arbitrary".'

"Second, there is no showing or even allegation that the differing benefit of EDC financing is the product or result of state action. The financing is not cost-effective for small businesses because primarily, according to plaintiff, attorney fees in the bonding process are substantial. There is no allegation that those fees are high because of any action taken by the state in the context of the challenged statute. It is presumed those fees are a matter of private agreement between attorney and client, free from express regulation by the state or its agencies. If small businesses can afford EDC financing, it is through no act or omission by the state. Since the equal protection clause protects only against state action, the challenge is without merit.

"The statute does not deny plaintiff or its members of equal protection either as written or as applied."

Third, plaintiff contends that the trial court erred in holding that plaintiff was without standing to raise constitutional questions regarding the tax waivers embodied in the EDCA. Relying on MCL 600.2041(3); MSA 27A. 2041(3),[8] plaintiff claims that it has standing to contest the illegal expenditure of state funds:

"Every action shall be prosecuted in the name of the real party in interest; but an executor, administrator, guardian, trustee of an express trust, a party with whom or in whose name a contract has been made for the benefit of another, or a party authorized by statute may sue in his own name without joining with him the party for whose benefit the action was brought, and further

\* \* \*

"(3) *an action to prevent the illegal expenditure of state funds or to test the constitutionality of a statute relating thereto* may be brought in the name of a domestic nonprofit corporation organized for civic, protective, or improvement purposes, or in the names of at least 5 residents of this state who own property assessed for direct taxation by the county wherein they reside." (Emphasis added.)

In reference to plaintiff's assertion that the act violated the internal improvements clause, we have already held that self-liquidating bonds do not constitute an indebtedness of the state, a county, or a municipality. Inasmuch as these bonds are not general obligation bonds, their issuance does not affect plaintiff as a taxpayer.

Plaintiff does not refer us to, nor are we able to find, support for its claim that a tax waiver is tantamount to an expenditure. We hold that plaintiff's action does not qualify as a taxpayer's suit.

---

[8] This statute is identical to GCR 1963, 201.2(3).

Guidance for this holding is found in *Menendez v Detroit:*[9]

"In each of these cases it is clearly recognized that prerequisite to a taxpayer's right to maintain a suit of this character against a unit of government is the threat that he will sustain substantial injury or suffer loss or damage as a taxpayer, through increased taxation and the consequences thereof. This is uniformly true of all the Michigan cases considering this subject."

Of a similar vein is *Andrews v South Haven,*[10] where the Supreme Court stated:

"The bill does not show that complainant has sustained or will suffer any loss or damage as a taxpayer by reason of what is charged. No increase of taxation for that purpose is shown. * * * To entitle him to equitable relief as a taxpayer, present or prospective damages must be shown."

Plaintiff also assails the trial court's holding that plaintiff lacked standing to challenge the constitutionality of the 1980 amendments[11] to the EDCA. These amendments relate to sundry matters, including industrial, commercial, housing, agricultural and forestry projects. Additionally, the amendments concern regions of specified population and regulated financial institutions.

A review of the 1980 amendments clearly indicates that plaintiff does not have standing to challenge their constitutionality. While conceding that it is not immediately affected by the alleged statutory defects, plaintiff argues that the issues relate to specialized areas of the law which are important to the public. Plaintiff asserts that unless

---

[9] 337 Mich 476, 482; 60 NW2d 319 (1953).

[10] 187 Mich 294, 304; 153 NW 827 (1915).

[11] 1980 PA 501, § 1.

standing is afforded it to challenge the constitutionality of the amendments, the issues might not ever be subjected to judicial scrutiny.[12]

It is axiomatic that a party cannot attack a statute on the ground that its application denies constitutional protection to others.[13] In our view, the trial court correctly ruled that plaintiff was without standing to challenge the 1980 amendments to the EDCA.

Last, plaintiff asserts that the Clinton County Board of Commissioners committed a palpable abuse of discretion in determining that Westmac's grain elevator project fulfilled a public purpose.

Under MCL 125.1610; MSA 5.3520(10), the local municipality has the right and obligation to determine whether a specific project satisfies a public purpose:

"(1) The local public agency, if required, shall submit its findings and recommendations for approval or rejection of the project plan, with any recommendations for modification, to the governing body of the municipality for which the corporation is incorporated.

"(2) The governing body of the municipality for which the corporation is incorporated, after a public hearing on the project plan with notice of the hearing given in accordance with section 17 shall determine whether the project plan constitutes a public purpose. If it determines that the project plan constitutes a public purpose, it shall then approve or reject the plan, or approve it with modification, based on the following considerations:

"(a) The findings and recommendations of the local public agency, if required.

---

[12] Alternatively, plaintiff maintained that inasmuch as it had standing to attack certain parts of the act, it should also have standing to attack alleged abuses that appear in 1980 PA 501, § 1.

[13] *United States v Raines,* 362 US 17; 80 S Ct 519; 4 L Ed 2d 524 (1960); 16 Am Jur 2d, Constitutional Law, §§ 192-194, pp 600-608.

"(b) The findings and recommendations of the project citizens district council, if established.

"(c) That the plan meets the requirements set forth in section 8.

"(d) The persons who will be active in the management of the project for not less than 1 year after the approval of the project plan have sufficient ability and experience to manage the plan properly.

"(e) The proposed method of financing the project is feasible and the corporation has the ability to arrange the financing.

"(f) The project is reasonable and necessary to carry out the purposes of this act."

"On April 28, 1981, the Clinton County Board of Commissioners approved Westmac's project, specifically finding that:

"* * * there exists in the County of Clinton the need for certain programs to alleviate and prevent conditions of unemployment, to assist and retain local industrial and commercial enterprises in order to strengthen and revitalize the County's economy and to encourage the location and expansion of industrial and commercial enterprises to provide needed services and facilities to the county and its residents."

Also approving the project was the Eagle Township Board, which, at its regular meeting held on July 6, 1981, made the following findings:[14]

"* * * the attached project plan and the project to which it relates serves to alleviate and prevent conditions of unemployment, strengthen and revitalize the economy of the County and the Township, encourage the location and expansion of enterprises in the County

---

[14] On July 28, 1981, the Clinton County Board of Commissioners again found that Westmac's project satisfied the public purpose requirement of the EDCA.

and the Township, and, therefore, constitutes an essential, vital and necessary public purpose."

Plaintiff contends that the project does not entail a sufficient public purpose to warrant the subsidy of low interest financing. Primarily, plaintiff argues that the grain elevator project will not result in a net increase in employment within the area in which it is located and that it will not yield a service which is not currently provided by private enterprises.

In *Poletown Neighborhood Council v Detroit*,[15] the Supreme Court, quoting from *Gregory Marina, Inc v Detroit*,[16] delineated the standard of review of a legislative body's determination that a project or action serves a public purpose:

" 'The determination of what constitutes a public purpose is primarily a legislative function, subject to review by the courts when abused, and the determination of the legislative body of that matter should not be reversed except in instances where such determination is palpable and manifestly arbitrary and incorrect.' "

Both plaintiff and defendants make excellent arguments in support of their positions in relation to whether the project serves a public purpose. Based on the applicable law and the record before us, we are unable to conclude that the findings of the Clinton County Board of Commissioners and the Eagle Township Board that Westmac's project serves a public purpose were palpably arbitrary and incorrect.

Affirmed.

[15] 410 Mich 616, 632; 304 NW2d 455 (1981).
[16] 378 Mich 364, 396; 144 NW2d 503 (1966).