# WHEELING

## HENCH *et al* v. PRITT *et al.*

### Submitted April 16, 1907.　　Decided June 12, 1907.

1. EMINENT DOMAIN—*Nature and Extent of Power—Taking for Private Use.*

    Under our Constitution private property cannot be taken for private use, either with or without compensation. (p. 274.)

2. SAME—*Determination of Right—Question of Law.*

    The question what is a public use is always one of law. Deference will be paid to the legislative judgment as expressed in enactments providing for an appropriation of property, but it will not be conclusive. (p. 277.)

3. SAME—*Delegation of Powers.*

    Section 69*a* and its sub-divisions, chapter 54, Code 1899, in so far as it attempts to confer the power and right of eminent domain

upon the owner or owners, lessee or lessees of timber or timber lands, quarries, &c. to be exercised by them in procuring rights of way for their private benefit and not for the public use, is unconstitutional, null and void. (p. 277.)

Error to Circuit Court, Randolph County.

Action by S. N. Hench and others against Asbury Pritt and others. From a judgment in favor of plaintiffs, defendants bring error.

*Reversed.  Dismissed.*

W. B. MAXWELL and TALBOTT & HOOVER, for plaintiffs in error.

DAILEY & BOWERS and HARDING & HARDING, for defendants in error.

McWHORTER, JUDGE:

Hench, Dromgold and Shull a partnership doing business under the firm name of Hench, Dromgold and Shull, claiming to be the owners of a large saw-mill plant at the town of Mill Creek in Randolph county on the Valley river, a station on the line of the Huttonville Branch of the Western Maryland Railroad, filed their petition in the circuit court of Randolph county under section 2370 &c., Code 1906 (section 69*a* and its sub-divisions, chapter 54) setting forth that they were the owners of large bodies of timber and timber lands in said county in the vicinity of said railroad in and on the waters tributary to said Valley river, none of which timber was more than twelve miles distant from said Mill Creek station. That aside from the timber owned by the petitioners there were other parties owning large bodies of timber and timber lands along and upon the said waters all of which timber would have to be hauled, by wagon at enormous cost, to the railroad and there manufactured or manufactured where it was situated and the lumber produced therefrom transported at an equally great cost by wagons to said railroad in order to market the same; that petitioners proposed and desired to construct of steel rails and wooden ties and maintain and operate by steam locomotives a railroad from their saw-mill at Mill Creek with an intersection at said town with the railroad and extending across the intervening lands to their said timber; that they had

mployed a competent engineer and had caused him to enter upon the intervening lands to survey, locate, mark and map the route of said proposed railroad between said points, and filing a copy of said map showing the total length of said road to be 10.41 miles; that the same would cross the lands of Asbury Pritt and Virginia Pritt, Charles C. Channel, Eugenia Ward and J. W. Cleavenger, said right of way over said lands being fully described on said map; that they had been wholly unable to agree with said owners or any one of them for the compensation to be paid to them for the use of said land which they averred to be an easement or right of way for a period of ten years, and stating the amount they had offered to pay to the several parties respectively for such compensation; averring that said right of way was needful and useful for the transportation of timber to market, including as well the timber belonging to petitioners as other timber not owned by them along said route and accessible thereto, and as to which timber and all other timber and manufactured products thereof situated along said route they would be common carriers prepared to haul for others many other things necessary and useful upon the farm and in the houses of residents along said route; that the condemnation of said right of way was necessary and of public utility, that no other route would serve the purpose of the one described in the proceedings and that if the same was condemned petitioners would use the same for railroad purposes and in accordance with the laws of the state; and prayed for the appointment of commissioners to view the said lands and proposed route for the railroad and examine the same and if they should deem the same needful and useful for the transportion of timber to market and that the condemnation thereof was necessary and of public utility, that no other practicable route would subserve the purpose of the parties then the commissioners should report in writing what damages would be sustained by the owners; and filed their notice of such condemnation proceedings served upon the said owners.

On the 14th day of September, 1906, the petition was presented together with a notice of the filing thereof and the same was ordered filed and the cause docketed, whereupon the owners of the land appeared by counsel and demurred

to said petition in which demurrer the plaintiff joined and the demurrer being considered by the court was overruled, to which ruling of the court defendants excepted. The demurrer alleges the following grounds and reasons: "First: Because this is an effort to take private property for private purposes; Secondly: Because the act of the Legislature, viz, Chapter XII of the Acts of 1885, under which petitioners are attempting to proceed, is unconstitutional in so far as the same authorizes the taking of private property for private purposes; Third: Because said petition shows upon its face that this is an effort to take private property for private use; Fourth: Because said petition does not make such showing or contain such allegations as would, in any event, entitle the petitioners to take private property for their use; Fifth: Because, especially, the said petition does not show that there is no other practicable way over which they could remove their timber, it being a fact that said petititioners now have and have had for years a private railroad, or tramroad upon which they have been running locomotives and hauling timber, which is parallel with the road they now propose to build and but a short distance therefrom and further it is a fact that from the town of Huttonville to the town of Mill Creek where petitioner's mill is located, the said proposed railroad will parallel the line of the Western Maryland Railroad (formerly the West Virginia Central & Pittsburg Railway) a common carrier, engaged in transporting all kinds of freight and passengers, so that there is no necessity for paralleling the same by petitioners for their private purposes and the petition.

Defendants also tendered their joint answer, to the filing of which plaintiffs objected and the objection was sustained. The court then appointed commissioners as provided by said section. The commissioners made a separate report as to each of said tracts of land, ascertaining the amount to be paid to the owners respectively as compensation for the land proposed to be taken and damages to the residue and reported that they deemed the said route for railroad needful and useful for the transportation of timber to market, and that the condemnation of the property, described in said petition, sought to be condemned belonging to each of said owners was necessary and of public utility and that no other

practicable route would subserve the purposes and the court confirmed the said reports. To which judgments of the court the owners of the lands proposed to be taken excepted and obtained a writ of error and *supersedeas.*

The answer and plea of the defendants sought to raise the question as to the necessity and public utility of the proposed road and of the right of the petitioners to condemn the property for the purposes set out, but which plea and answer were rejected and not permitted to be filed. It is conceded that the question of the constitutionality of section 69a and its sub-divisions, chapter 54, Code 1899, providing for the condemnation and taking of private property for private use is the principal if not the only question to be decided in this case. Section 9 Art. III of our Constitution provides: "Private property shall not be taken or damaged for public use, without just compensation; nor shall the same be taken by any company, incorporated for the purpose of internal improvement, until just compensation shall have been paid, or secured to be paid, to the owner; and when private property shall be taken, or damaged, for public use or for the use of such corporation, the compensation to the owner shall be ascertained in such manner, as may be prescribed by general law; *Provided*, that when required by either of the parties, such compensation shall be ascertained by an impartial jury of twelve freeholders,"

There is no provision in the constitution authorizing the legislature to provide for the taking of private property for private use, and there is no provision in our Constitution nor in the constitutions of any other of the states of the Union expressly forbidding the legislature to pass laws whereby the private property of one citizen may be taken and transferred to another for his private use. As was well said by JUDGE GREEN in *Varner* v. *Martin*, 21 W. Va. 534, at page 548: "It was doubtless regarded as unnecessary to insert such a provision in the Constitution or bill of rights, as the exercise of such an arbitrary power of transferring by legislation the property of one person to another, without his consent, was contrary to the fundamental principles of every republican government; and in a republican government neither the legislature, executive or judicial department can possess unlimited power. Such a power as that of taking

the private property of one and transferring to another for
his own use, is not in its nature legislative, and it is only
legislative power, which by the Constitution is conferred
on the Legislature. Such an act if passed by the Legisla-
ture would not in its nature be a law, but would really be
an act of robbery; the exercise of an arbitrary power not
conferred on the Legislature." And at page 549 he further
says: "There is an entire concurrence of all the authori-
ties in the proposition, that private property cannot be taken
for private use, either with or without compenstaion. A
few of the many authorities, in which this proposition
is laid down as unquestionable law are here cited. See: In
the matter of *Albany Street*, 11 Wend. 151; *Embury* v.
*Conner*, 5 Comst. 511; *Taylor* v. *Porter*, 4 Hill (N. Y.) 140;
*Beekman* v. *R. R. Co.*, 3 Paige 73; *Concord R. R. Co.* v.
*Greely*, 17 N. H. 47; *Dunn* v. *Charleston*, Harper (S.
C.) Law R. 189; *Bankhead* v. *Brown*, 25 Iowa, 540;
*Wilkison* v. *Leland*, 2 Pet. 627; *Robinson* v. *Swope, &c.*, 12
Bush. 21; *N. & L. R. Cor.* v. *S. L. R. Co.*, 2 Gray 137;
*Ten Eyck* v. *D. & R. C. Co.*, 3 Harr. 200; *Varick* v. *Smith*,
5 Paige 137; *Parham* v. *Justices, &c.*, 9 Ga. 341; *Hall* v.
*Bord*, 14 Ga. 1; *Clark* v. *White*, 2 Swann, 540: *Bangor R.R.*
v. *McComb*, 60 Me. 290; *Heburn's Case*, 3 Bland 95; *West
River Bridge* v. *Dix*, 6 How. 507; *Sadler* v. *Langham*, 34
Ala. 311; *Pittsburg* v. *Scott*, 1 Pa. St. 309; matter of *John and
Cherry Street*, 19 Wend. 689; *Cooper* v. *Williams*, 4 Ohio
253; *Buckingham* v. *Smith*, 10 Ohio 296; *Reeves* v. *The
Treasurer of Wood County*, 8 Ohio N. S. 333; *Bloodgood* v.
*Mohawk & Hudson R. R. Co.*, 18 Wend. 55; *Kramer* v.
*Brown*, 3 Wis. 603; *N. Y. & Harlem R. R. Co.* v. *Kip*, 46
N. Y. 546; *Nesbit* v. *Trumbo*, 39 Ill. 110; *Osborn* v. *Hunt*,
24 Wis. 90; and *Tyler* v. *Beacher*, 44 Vt. 648." The first
point of the syllabus in *Varner* v. *Martin* holds: "Under
our Constitution private property cannot be taken with or
without compensation for private use." In *Fallsburg* v.
*Alexander*, 101 Va. 98, the first point of the syllabus is, "Al-
though not forbidden by the Constitution of this State the
Legislature cannot authorize the taking of private property
for private use, as it is contrary to the fundamental princi-
ples of a republican government." And point 2 of the syl-
labus is, "A use to be public must be fixed and definite. It

must be one in which the public, as such, has an interest, and the terms and manner of its enjoyment must be within the control of the State, independent of the rights of the private owner of the property appropriated to the use. The use of property cannot be said to be public if it can be gainsaid, denied, or withdrawn by the owner. The public interest must dominate the private gain."

In *Cemetery Ass'n* v. *Redd*, 33 W. Va, 262, it is held that: "An application to condemn land for public use must distinctly state that the land is needed for public use, and will, when condemned, be devoted to such public use." In said case at page 263 it is said: "Ownership and enjoyment of private property are sacred in the eye of the law. The owner's right yields only to public necessity. The great power of eminent domain does overcome this right of private property, but never for public use, under our constitution." Citing *Varner* v. *Martin, supra; Railroad Co.* v. *Railroad Co.*, 17 W. Va. 812. The use which the public is to have of the property condemned must be fixed and definite and the general public must have a right to the definite and certain use thereof. A supposed indirect advantage to the public is not in contemplation of law a public use. It is not sufficient to say that the general prosperity of a community will be promoted by the taking. The use must be needful for the public to have and which it cannot do without except by suffering great loss. The petition in case at bar clearly shows that the plaintiffs are seeking to obtain this right of way in order to enable themselves to transport their timber from their land to their mill, clearly showing that it is for their private use and benefit, and in order to give it the semblance of being for public use they show that the other owners of timber along the route may be enabled also to market their timber over the same road. It in no way appears that the general public will derive any benefit from it other than the development of private property and interests. The proposed road is not to be a common carrier nor one which will be of use to the community at large, to be used by the public in general, but simply a private way for the convenience of the projectors and builders thereof for the shipment of their logs and timber to market.

It is contended here by petitioners that for certain purposes their road will be a common carrier, and yet it is proposed to equip the road when built for the purposes of shipping timber and logs alone. It is not proposed to have the equipment of a common carrier and it is only for the private interests of those who would secure the right of way. In *Railroad Co.* v. *Iron Works*, 31 W. Va. 710, it is held: "Evidence, that all, who wish to avail themselves of the proposed switch, branch-road or lateral work, can do so, is not sufficient to show, that the use of the work will be for the benefit of the public. " This road, if built as proposed, would accommodate only its builders and the other parties mentioned who have timber in the same section, if indeed it should accommodate the latter. In the case just cited, at page 718: "The question here is not one of compensation, but it is whether the petitioner had a right to take the property. It of course has no right to take private property for private use, but it has the right to take private property for public use on paying a just compensation therefor. The right to take, which depends upon whether it is to be taken for public or private use, is a judicial question, and the decision of the circuit court on that question is subject to review. *Railroad Co.* v. *Railroad Co.*, 17 W. Va. 812. "

Section 69a and its sub-divisions, chapter 54, Code 1899, provides for giving a right to the owners or lessees of timber or timber lands, quarries, mills, oil and salt wells, coal mines, lime kilns or other real estate in the vicinity of any common carrier, not more than twelve miles therefrom, to build lateral railroads for the purpose of transporting their private products, in the absence of any consitutional provisions authorizing any such legislation. In *Sholl* v. *Coal Co.*, 10 N. E. (Ill.) 199, it is held: "Land belonging to a private individual is not subject to condemnation for the extension of a tramway, belonging to a corporation, organized for the purpose of mining and selling coal, so as to connect the way with a railroad, and thus secure to the company railroad facilities for the transportation of its coal; the use to which the land would be put not being a public use. " *Mining Co.* v. *Dewitt*, 15 Pac. (Cal.) 74. In *Lumber Co.* v. *Morris*, 74

Pac. (Wash.) 681, it is held that, whether a contemplated use is public shall be a judicial question to be determined without regard to any legislative assertion that the use is public, the fact that a statute authorises the comdemnation of land for a particular purpose does not raise a presumption that such purpose is a public use. It is also held to be a judicial question in *Gas Co.* v. *Hawkins*, 66 N. E. (Ind.) 765. In *Weidenfeld* v. *Sugar Run Co.*, 48 Fed. Rep. 615, at page 618, it is said: "Whether the use is a public one, for which private property may be taken, is a judicial question. If the use itself is found to be only private, or, further, if, the use being public, the appropriation can in no respect be subservient thereto, it is the duty of the judicial department to protect the citizen by proper remedies from the taking of his property, whether attempted in open disregard of or under color of law." Citing *Boom Co.* v. *Patterson*, 98 U. S. 403., *Edgewood Railroad Co's Appeal*, 79 Pa. St. 257, was a case in which a number of persons had procured a charter for a railroad company and under cover of constructing a railroad for public use were engaged in the construction of a railroad from a tract of coal land owned by themselves to the Pennsylvania Railroad. A bill was filed by a property holder to restrain the condemnation of his property by virtue of the power of eminent domain conferred upon the railroad company over a portion of his property for its uses. The Supreme court of Pennsylvania, finding the facts to be that the railroad was constructed with the primary object of connecting the coal mines with the Pennsylvania Railroad, held that the road was being constructed for private purposes under the cover of a power obtained under the general railroad laws of the state, that there appeared a perversion of an enactment passed for one purpose in order to subserve other and inconsistent purposes, that the charter of the company did not warrant the appropriation of the land of the plaintiff for the purpose for which the defendant had applied and that it did not possess the right or franchise to do the acts which had resulted in the injury of which plaintiff complained.

Cooley on Constitutional Limitations, 774 says. "The question what is a public use is always one of law. Deference will be paid to the legislative judgment, as expressed

in enactments providing for an appropriation of property, but it will not be conclusive. '' Citing a long list of authorities.

*Zircle* v. *Southern Ry. Co.*, 45 S. E. (Va.) 802, cited by defendants in error, was a case of a railway company for the condemnation of a way, for a branch road or spur track a distance of two-thirds of a mile to Manor Mills, a private industrial enterprise, and it was there held that the company had a right to condemn if the track was to be used by the company in furtherance of its public business. In *Gas Co.* v. *Lowe*, 52 W. Va. 662, at page 664, it said: ''It is the province of the legislature to declare the public uses for which private property may be taken, but the power of the legislature in this respect is limited by the Constitution, and it remains with the courts to say whether the legislative enactment making such declaration and appropriation is in conflict with the constitutional limitation, and if so, to declare it unconstitutional and void. '' Citing *Railroad Co.* v. *Railroad Co.*, *supra; Varner* v. *Martin*, *supra; Boom Co.* v. *Patterson*, *supra*.

From what has been said it follows that section 69*a* and its sub divisions, chapter 54, Code 1899, in so far as it attempts to confer the power and right of eminent domain upon the owner or owners, lessee or lessees of timber or timber lands, &c. to be exercised by them in the condemnation of lands for rights of way for their private benefit and not for the public use is unconstitutional, null and void. Therefore the judgment of the circuit of Randolph county is reversed and annulled and this Court proceeding to render such judgment as the circuit court should have rendered the demurrer to the petition of the plaintiffs is sustained and the petition and notice dismissed.

*Reversed. Dismissed.*