# CHARLESTON.

BATES v. STATE BRIDGE COMMISSION *et al.*
STATE BRIDGE COMMISSION *v.* H. G. NEASE CO.

(Nos. 428, 429)

Submitted April 22, 1930. Decided May 13, 1930.

*William H. Rardin* and *F. G. Musgrave,* for plaintiffs.

*Hogg & Hogg, Howard B. Lee,* Attorney General., and *R. Dennis Steed,* Assistant Attorney General, for defendant.

LIVELY, PRESIDENT:

By demurrer to the bill in cause No. 428, and by motion to quash the petition for condemnation in case No. 429, the constitutionality of chapter 8, Acts 1929, was raised. The bill in the first named cause seeks a perpetual injunction against the state bridge commission restraining it from exercising its powers under the act; and the petition in the other case seeks condemnation of defendant's lands for bridge purposes under the act. The circuit court sustained the demurrer to the bill, and overruled the motion to quash and dismiss the petition for condemnation, thus sustaining the constitutionality of the act, and certified his rulings for review.

The sole question presented here is the constitutionality of chapter 8, Acts 1929, which creates the state bridge commission and defines its powers and duties.

The duty of the court to pass upon the constitutionality of an act of the Legislature, a co-ordinant branch of the government, is a duty of extreme delicacy, and it is to be exercised with the greatest caution, and even with reluctance. *State* v. *Goodwill,* 33 W. Va. 179, 10 S. E. 285, 6 L. R. A. 621, 25 Am. St. Rep. 863. Every law enacted by the Legislature is presumed to be constitutional until the contrary is clearly shown. It is the duty of the court to uphold every act if by any reasonable construction and interpretation it can be seen that the act is not in contravention of the fundamental law. If there be any doubt in the mind of the court as to the constitutionality, the doubt must be solved in favor of the act. *Slack* v. *Jacob,* 8 W. Va. 612. Only in a case of very plain infraction of the constitution, from which there is no escape, should the courts declare an act invalid. If there be doubt, the act must be affirmed. *Ex parte McNeeley,* 36 W. Va. 84, 14 S. E. 436, 15 L. R. A. 226, 32 Am. St. Rep. 831. On the other hand, where the act is in plain violation of some constitutional provision, and there is no escape from that conclusion, the courts should promptly and firmly uphold the Constitution and invalidate the act. With these well-known rules of construction in mind, often reiterated in our decisions, we approach the question here presented.

The purpose of the act is to purchase and build, through a state agency, bridges over navigable rivers in the state, or those forming a boundary of the state, and pay therefor solely with tolls derived from the bridges; and, when the revenue shall have paid the purchase price or construction charges, then the bridge to become free, except as to nominal tolls for maintenance; and it is provided that other means than tolls may be invoked to maintain the bridges; all as a part of the system of state highways. The act is well drawn, the objects and purposes clearly stated, and the powers and duties of the commission clearly defined.

It is urged against the act that the power given the commission to issue bridge revenue bonds of the state for the purchase

or erection of bridges is an unauthorized delegation of legislative powers. The Legislature has provided that bridges may be purchased or constructed under the act, and paid for out of the revenue derived therefrom. The exercise of judgment and discretion by the commission as to whether it will buy or build and what bridges it will buy or build is administrative. It is not perceived what provision of the Constitution is thus violated. Many boards and commissions have been created and clothed with judgment and discretion in carrying out legislative purposes, such as the state board of control, the state road commission, and the public service commission.

It is urged that the act violates the letter and spirit of section 4, article 10, of the Constitution, which says that "No debt shall be contracted by this State, except to meet casual deficits in the revenue, to redeem a previous liability * * * to suppress insurrection, repel invasion or defend the State in time of war." It is argued that the bonds authorized to be issued by the commission are debts of the state. Are these bonds a debt of the state within the meaning of said section 4, above quoted? The act expressly says in section 12 thereof that nothing therein shall be construed or interpreted to authorize the incurring of a state debt of any kind or nature. The payment of the bonds is to be made exclusively from the revenues derived from the bridges. No other revenues are applicable. Taxation for their redemption in any form cannot be imposed. The state cannot be compelled to pay them. The act itself is a part of the bonds as if written therein in extenso. The purchasers of the bonds are bound by the act, and cannot look to the state for payment. The bonds are not debts of the state within the meaning of the Constitution, above quoted. When our Constitution of 1872 was formed, the experience of the mother state with debts contracted by her, and with suits to compel payment, were fresh in the minds of the framers of that Constitution. Numerous suits ending in heavy judgments and costs had been prosecuted against the commonwealth; illiberal contracts and guaranties of enterprises had been made by governmental agencies detrimental to her interests; public officers and agencies had not been always zealous and careful in the conduct of public affairs; and juries leaned toward the individ-

ual as against the commonwealth. With this experience, the framers of the Constitution of 1872 provided that this state should not contract indebtedness, except in specified instances, and that the state should never be made defendant in any court of law or equity. The debts against which the prohibition lies are those for which suit may be maintained or the state's revenues and resources pledged or sequestered.

.The great weight of decisions is that bonds of a state or political subdivision payable solely out of revenue derived from a utility of a public nature acquired by the money derived from the bonds do not create debts within the constitutional inhibition against the contraction of public debt, but partake of the nature of purchase-money mortgages. *Fox* v. *Bicknell,* 193 Ind. 537, 141 N. E. 222; *State* v. *Portage,* 174 Wis. 588, 184 N. W. 376; *Brockenbrough* v. *Board of Water Commissioners,* 134 N. C. 1, 46 S. E. 28; *Winston* v. *Spokane,* 12 Wash. 524, 41 P. 888; *Griffin* v. *Tacoma,* 49 Wash. 524, 95 P. 1107; *Bowling Green* v. *Kirby,* 220 Ky. 839, 295 S. W. 1004; and *Klein* v. *Louisville,* 224 Ky. 624, 6 S. W. (2d) 1104, all cited by counsel for the commission. Especially applicable on this point are the cases of *Bloxton* v. *Highway Commission,* 225 Ky. 324, 8 S. W. (2d) 392, and *Alabama State Bridge Corporation* v. *Smith,* 217 Ala. 311, 116 So. 695. We hold that these bonds proposed to be issued are not debts of the state within the meaning of section 4, article 10, of the Constitution.

One of the points raised by the pleadings, and certified here, but not briefed on behalf of protestants, is that the provision of the act exempting the bonds from taxation is in violation of section 1, article 10, Constitution, which says that "taxation shall be equal and uniform * * * and all property, both real and personal, shall be taxed in proportion to its value, to be ascertained as directed by law. * * * And public property may, by law, be exempted from taxation." These bonds should be considered as instrumentalities of the government, designed to promote the welfare of the state, and therefore by law may be exempted from taxation. The purchasers of these bonds, as before observed, must look alone to the revenues of the bridges for payment. By exemption from taxation, the commission will be better enabled to sell them on the bond mar-

ket. It facilitates the public purpose. The bridges themselves and the governmental instrumentalities which bring them into existence are all impressed with public use and benefit, and it is well within the province of the Legislature to expressly exempt them from taxation. 26 R. C. L. 334, par. 292; *Williamson* v. *Massey, Auditor,* 33 Grat. (Va.) 237. Had there been no express exemption from taxation, the bonds would have been taxable. *State* v. *Page,* 100 W. Va. 166, 130 S. E. 426, 44 A. L. R. 501.

Another objection against the validity of the act (not here briefed by protestant) is that it embraces more than one subject and that both subjects are not properly expressed in the title. The contention is that the right to exercise eminent domain outside of the state is not expressed in the title. The title which says the act provides for condemnation is broad enough to include condemnation wherever it may lawfully be exercised. The title says the act is for the purpose of purchasing, constructing, and improving bridges over streams wholly or partly within the state or forming a boundary of the state. When the principal object is fairly expressed in the title, it is not necessary to include in the title everything which, by fair intendment, may fall within the purview of the principal object. The title need not be a complete index or abstract of the contents of the act. *Shields* v. *Bennett,* 8 W. Va. 74. This point of criticism is without merit.

The last point urged against the act, fairly arising in the condemnation case against the H. G. Nease Company, is that there is no adequate provision to pay compensation to the landowner in case of condemnation.

Section 9, article 3, Constitution, says: "Private property shall not be taken or damaged for public use, without just compensation; nor shall the same be taken by any company, incorporated for the purposes of internal improvement, until just compensation shall have been paid, or secured to be paid, to the owner." The act in question reads, in section 6: "The state shall be under no obligation to accept and pay for any property condemned and shall in no event pay for the same except from the funds provided by this act, and in any proceeding to condemn, such orders shall be made by the court having juris-

diction of the suit, action or proceedings as may be just to the state and to the owners of property to be condemned, and a bond or other security may be required by the court securing such owners against any loss or damage to be sustained by reason of the failure of the state to accept and pay for the property, but such bond or security shall impose no liability or debt upon the state as contemplated by the provisions of the constitution of the state in relation to state debt.'' Does this act in any way attempt to deprive the landowner of compensation in violation of said section 9, article 3? A cursory reading of said section 6 impels a negative answer. But it is urged that the provision for payment is inadequate. The source of payments is the proceeds of the bonds. If the bonds be not sold, the land cannot be taken and the landowner will not be damaged. Section 18, c. 42, Code, gives to the condemnor three months from the filing of the report of commissioners in condemnation, or jury verdict, in which to pay into court the sum so ascertained with interest. The report of commissioners, or the verdict of the jury, does not necessarily *take* the property. There is no obligation on the part of the bridge commission to pay the damages so ascertained. On the other hand, if it pays the money into court, the landowner cannot complain, for his constitutional guaranty of payment has been met. Under the statute, there is no ''taking'' until just compensation is paid. The act in question gives the court the power to protect the landowner against loss or damage, if the property be not taken and paid for. It seeks to supplement the general law by which just compensation is secured to the owner by saving him harmless if his property be not taken.

We have carefully considered the act, and hold it to be constitutional.

*Affirmed.*