STATE *ex rel.* THE CITY OF CHARLESTON, *etc.*

*v.*

KENNETH L. COGHILL, *Clerk, etc.*

(No. 13355)

Submitted May 16, 1973.          Decided July 24, 1973.

Dissenting Opinion August 2, 1974.

*Jackson, Kelly, Holt & O'Farrell, James K. Brown, Lee O. Hill, Scott L. Messmore,* for relator.

*Robert R. Harpold, Jr.,* City Solicitor, for respondent.

NEELY, JUSTICE:

This is an original action in mandamus in which the City of Charleston, a municipal corporation of the State of West Virginia, seeks to require its clerk, Kenneth L. Coghill, to publish a certain notice inviting proposals from all persons interested in purchasing or leasing space included in a proposed off-street parking facility in Charleston. Respondent Coghill was authorized and directed to perform this duty by Resolution No. 228-73 which was adopted by the Charleston City Council on April 2, 1973.

The respondent clerk has refused to publish the notice upon the ground that Chapter 8, Article 16, Section 4a of the *Code of West Virginia,* 1931, which gives authority to municipal corporations to construct motor vehicle parking facilities, is unconstitutional. If *Code,* 8-16-4a is constitutional, then the City Clerk has a nondiscretionary legal duty to publish the notice as directed by the council. The purpose of this litigation is to test the validity under the State and Federal Constitutions of the enabling legislation, *Code,* 8-16-4a, in order to facilitate the preparation of plans and orderly financing for a project in Charleston. In similar cases this Court has permitted an action in mandamus to be used as a vehicle for testing the constitutionality of a statute. *State ex rel. State*

*Building Commission v. Moore,* 155 W.Va. 212, 184 S.E.2d 94 (1971); *State ex rel. County Court v. Demus,* 148 W.Va. 398, 135 S.E.2d 352 (1964); *State ex rel. County Court v. Bane,* 148 W.Va. 392, 135 S.E.2d 349 (1964).

The respondent clerk first maintains that the Legislature's delegation of authority to a municipal corporation to determine the amount of space in a public parking facility which will be leased or sold for private business, commercial, or charitable uses is an unconstitutional delegation of legislative power. While noticing that respondent's position finds its source in the well known constitutional principle that a legislature may not abdicate its legislative power, it has also long been established law that a legislature may delegate legislative powers to municipal corporations as to matters of purely local concern. 16 AM. JUR. 2d, *Constitutional Law* § 251. This Court said in Syllabus pt. 1 of *West Virginia Water Service Company v. Cunningham,* 143 W.Va. 1, 98 S.E.2d 891 (1957):

> " ' "Under the police power of the State, the Legislature has the power to provide for the protection of the safety, health, morals, and general welfare of the public, and may delegate such powers to municipalities created by it." Pt. 1 Syllabus, *Hayes v. The Town of Cedar Grove,* 126 W.Va. 828 [30 S.E.2d 726]'. Point 6 Syllabus, *State ex rel. Bibb v. Chambers, Mayor, etc.,* 138 W.Va. 701 [77 S.E.2d 297]."

This Court, therefore, holds that the Legislature is entitled to delegate power to a municipal corporation to determine the appropriate mix of public and private uses of a public parking facility, subject to the constitutional limits on the municipality's discretion which will be further discussed in this opinion.

The respondent's most serious challenge to the enabling legislation is that it does not fulfill a public purpose because it authorizes the allocation of space within a public facility for sale or lease to private individuals. In *Code,* 8-16-4a (a) the Legislature set forth certain findings

of fact which reasonably lead to the conclusion that government intervention is necessary and proper to alleviate the problems found by legislative investigation. *Code,* 8-16-4a (a) says in relevant part:

" . . . [T]hat the lack of adequate planning and supervision of the location of parking facilities, the parking of motor vehicles of all kinds and the lack of adequate parking facilities for motor vehicles of all kinds substantially impede the free circulation of traffic in, through and from many municipalities in this State, impede the rapid and effective fighting of fires and disposition of police officers therein, contribute to the location and relocation of commercial and business enterprises outside of urban areas and retard the development of commerce and business within many municipalities in this State, thereby giving rise to urban blight and adversely affecting or threatening to adversely affect the tax base of such municipalities; that such parking crisis can be reduced by such municipalities providing adequate motor vehicle parking facilities strategically located there; that providing properly located terminal space for motor vehicles is a public responsibility; that fostering the development of commerce and business within municipalities, with the increased tax revenues resulting therefrom, is a public purpose; . . . "

Courts are bound, except in extraordinary cases, by the findings made by the Legislature, and, "[a] fact once determined by the legislature, and made the basis of a legislative act, is not thereafter open to judicial investigation." *State ex rel. West Virginia Housing Development Fund v. Copenhaver,* 153 W.Va. 636, 171 S.E.2d 545 (1969).

Prior decisions of this Court have continuously enlarged the sphere of permissible government action in what was formerly considered exclusively the private sector. In *Chapman v. Housing Authority,* 121 W.Va. 319, 3 S.E.2d 502 (1939) this Court held valid the West Virginia Housing Act which had as its primary purpose slum clearance. In *State ex rel. West Virginia Housing Development Fund v. Copenhaver, supra,* this Court held constitutional Chapter 31, Article 18, Section 1, *et seq.*

of the *Code of West Virginia,* 1931, as amended, which provided for the West Virginia Housing Development Fund. The Fund had as its purpose an increase in the amount of housing available to West Virginia residents. Similarly in *County Court v. Demus, supra,* this Court reviewed the Industrial Development Bond Act, Chapter 13, Article 2C, Section 1, *et seq.* of the *Code of West Virginia,* 1931, as amended, which permitted a county or municipality to acquire property for the purpose of leasing it for industrial purposes, and this Court again found the legislation to be without constitutional infirmities. These cases clearly establish the broad sphere of permissible governmental activity in areas where the Legislature determines that government action is a necessary supplement to private enterprise to alleviate social problems. Public parking is among the public purposes on which the Legislature may direct or authorize government action. *Wilmington Parking Authority v. Ranken,* 34 Del. C.H. 439, 105 A.2d 614 (1954).

The constitutionality of the enabling legislation would be easily determined if it only authorized construction of facilities to be used exclusively for public parking. However, *Code,* 8-16-4a (b) expressly provides that a municipality may sell or lease to private individuals space for commercial, business, or charitable purposes within the public parking facility. The question with reference to this provision is whether the enabling legislation establishes sufficiently definite constitutional standards of public purpose to sustain the statute.

Under the cases cited above in connection with the permissible sphere of governmental activity and the public purpose requirements, it is clear that most governmental activity has ancillary private benefits which are enjoyed by some private individuals more than other private individuals. For instance, in *Chapman v. Housing Authority, supra,* the West Virginia Housing Act was found to have as its primary purpose slum clearance and as an ancillary purpose, low cost housing. This Court

ruled that slum clearance and low cost housing did not deprive any person of the equal protection of the laws, although there was a private benefit conferred upon those occupants of low cost housing which could not be enjoyed by all other persons similarly placed. The Court ruled such benefits were ancillary and incidental to the public purpose of promoting and protecting, health, morals, safety, and the public welfare. Hypothetically the owners of private motor vehicles who park their vehicles in the parking facility will enjoy a private benefit over those who, due to space limitations within the parking facility, cannot park their motor vehicles there. This result, however, does not detract from the public purpose of the parking facility. Similarly, the private commercial and business occupants within the public parking facility will enjoy a private benefit over those who, due to space limitation, cannot locate their businesses within the parking facility. Again, this result, in the abstract, does not detract from the public purpose of the parking facility unless the private benefits to the private business occupants are so overwhelming, compared with the public benefits, that the nature of the government's project changes from a public purpose with private ancillary benefits to a private purpose with public ancillary benefits.

It is argued by respondent that adequate standards are not established by *Code,* 8-16-4a to assure that any private use of a municipal parking facility will be ancillary and incidental to the underlying public purpose. There is some merit to this argument as *Code,* 8-16-4a grants broad statutory authority to a municipality to build a parking facility and places no limitations on the respective proportions of space dedicated to public parking and private use. *Code,* 8-16-4a (b) (1) and (2) say:

"(b) The governing body or bodies, in its or their discretion, may provide by ordinance or ordinances:

"(1) For the leasing by the board as lessor of space in or on a municipal public works which is a

motor vehicle parking facility for any business, commercial or charitable use to such person, for such fair and adequate consideration, for such period or periods of time and upon such other terms and conditions as such body or bodies or the board may agree to. In connection with the leasing of any such space, the board may agree to provide in or on such motor vehicle parking facility such structures, accommodations or improvements as may be necessary for such business, commercial or charitable use or such space may be leased upon condition that the lessee shall provide the same in or on the space so leased.

"(2) For the leasing by the board as lessor or the selling of air space over a municipal public works which is a motor vehicle parking facility for any business, commercial or charitable use to such person, for such fair and adequate consideration, for such period or periods of time in the case of a lease and upon such other terms and conditions as such body or bodies or the board may agree to. Any lease or deed of sale of such air space may contain provisions (i) authorizing the use of such areas of the underlying motor vehicle parking facility as are essential for ingress and egress to and from such air space, (ii) relating to the support of any building or other structure to be erected in such air space, and (iii) relating to the connection of essential public or private utilities to any building or other structure in such air space."

Looking at the act in its entirety, this Court concludes that the first section, *Code*, 8-16-4a (a) by which the Legislature finds specific facts and sets forth the problems which the act seeks to remedy, establishes the overall public purpose of the act. The succeeding enabling sections, which give great latitude to a municipality, must then be read in conjunction with the preceding public purposes. Acts of the Legislature are always presumed to be constitutional, and this Court will interpret legislation in any reasonable way which will sustain its constitutionality. *State ex rel. West Virginia Housing Development Fund, supra.* The fact that an act is

constitutional on its face does not mean that under color of its authority, a municipality may do things which are unconstitutional. In this action in mandamus the Court does not have before it the details of any particular proposal, and although a parking facility designed for an acknowledged public purpose is constitutional, even though it confers ancillary and incidental benefits upon private persons, a parking facility which has as its primary and dominant purpose the conferring of private benefits, with only ancillary public benefits, would be an unconstitutional use of the authority conferred by *Code, 8-16-4a.*

In the landmark case of *Wilmington Parking Authority v. Ranken, supra,* the Delaware statute which authorized the parking authority only permitted leasing for commercial use to the extent that such leasing was necessary and feasible to finance and operate the facilities. This established a definite test for determining the extent to which private activities might be mixed with public ones; however, in West Virginia the Legislature has given the municipality more latitude which we hold to be valid. Economic considerations are not the sole criteria for determining whether commercial sale or leasing are necessary and ancillary to the public purpose. As noted above, West Virginia has incorporated other public policy objectives into other sections of the law. For example, Chapter 16, Article 18, Section 1, *et seq.* of the *Code of West Virginia,* 1931, as amended, provides for urban renewal authorities. Certainly the creation of aesthetically appealing, convenient, and efficient downtown urban centers is a public purpose and may be considered in determining the validity of a particular parking facility. The development of modern urban centers with open spaces, fountains, and malls in which people may gather and enjoy an enhanced social and intellectual life is a public purpose. Therefore, if any given parking facility project is challenged on the constitutional grounds of lack of public purpose a court must look to an expansive definition of public purpose and evaluate the project in

terms of (1) the necessity of commercial sale or leasing of space to finance the parking facility; (2) the degree to which the facility will enhance or implement any pre-existing or proposed general plan of urban development and renewal; and (3) the degree to which the proposed project will enhance the State's public policy of encouraging economic development and the expansion of industry and commerce. Where it appears as a matter of fact that a proposed parking authority is merely a disguise for individual profit, a court is entitled to strike down the enterprise.

In the case of *City and County of San Francisco v. Ross*, 270 P.2d 488 (Cal. App. 1954) the California Court held that the acquisition of land by a city for the purpose of leasing it to an entrepreneur for the construction of parking facilities was unconstitutional where the city, by the terms of the lease, abdicated its right to control the charge for parking and left the entrepreneur free to charge such rates as the traffic would bear. Similarly, in the case of *Price v. Philadelphia Parking Authority*, 422 Pa. 317, 221 A.2d 138 (1966) where the Philadelphia Parking Authority was to construct a garage at an estimated cost of between eight and nine million dollars, the Pennsylvania Court struck down the proposal because it was a disguised attempt to effect a private purpose. The garage would have provided space for approximately 862 automobiles, and was to be leased to the National Land and Parking Authority for operation as a parking facility. In addition to the garage, the authority also agreed to lease the air space over the proposed facility to a private developer for the construction of a high-rise apartment complex. The completed structure was to consist of two apartment towers rising twenty-two floors above the garage containing in excess of one thousand apartment units. The developer was also allocated space on the ground and concourse levels of the garage for its own use or for lease to commercial tenants. The court found that the project was not for the public benefit because there would be a net gain of only one hundred and

eighty parking spaces in the face of numerous and substantial benefits which would accrue to the private developer.

Therefore, any abuse of *Code,* 8-16-4a with reference to a proposed facility is still subject to challenge on the facts of the individual case. The plan of the municipality should not be invalidated by the courts, "unless the judicial mind conceives [the project] to be without reasonable relation to the public interest or welfare . . . ." *Faulconer v. City of Danville,* 313 Ky. 468, 232 S.W.2d 80, (1950).

In the case at bar, respondent further challenges *Code,* 8-16-4a upon the grounds that exempting from taxation municipally owned parking facilities and the bonds and interest which finance such a facility, violates Sections 1 and 9 of Article X of the *Constitution of the State of West Virginia* where part of the facilities are used for private business. Sections 1 and 9 of Article X of the *Constitution of West Virginia* provide, in applicable part, as follows:

"§ 1. Subject to the exceptions in this section contained, taxation shall be equal and uniform throughout the State, and all property, both real and personal, shall be taxed * * *, but * * * public property * * * may by law be exempted from taxation; * * * "

"§ 9. The legislature may, by law, authorize the corporate authorities of cities, towns and villages, for corporate purposes, to assess and collect taxes; but such taxes shall be uniform with respect to persons and property within the jurisdiction of the authority imposing the same."

This Court was confronted with the same issue of taxation in *Chapman v. Housing Authority, supra,* where the Housing Authority Act contained language which exempted from taxation property, including bonds, notes and other evidence of indebtedness of local housing authorities. This Court ruled that whether the property sought to be declared exempt from taxation was "public property" in the sense of the term as used in Section 1 of Article X depended upon whether such property was

used to further a "public purpose." In *Chapman* the Court held that slum clearance and low-cost housing advanced a public purpose, and that the property held or used in connection with such a purpose by a housing authority was "public property within the meaning of the West Virginia Constitution, and should be exempt from taxation."

It is settled law in West Virginia that bonds or other obligations of a public corporation, the proceeds of which are used to fulfill a public purpose, may be properly exempted from taxation. In *Bates v. State Bridge Commission,* 109 W.Va. 186, 153 S.E. 305 (1930) this Court stated that revenue bonds used to finance the building of a bridge are exempt from taxation. The Court said at p. 189:

> "These bonds should be considered as instrumentalities of the government, designed to promote the welfare of the state, and therefore by law may be exempted from taxation. The purchasers . . . must look . . . to the revenues of the bridges for payment. By exemption from taxation, the commission will be better enabled to sell them on the bond market. It facilitates the public purpose. The bridges themselves and the governmental instrumentalities which bring them into existence are all impressed with public use and benefit, and it is well within the province of the Legislature to expressly exempt them from taxation."

In the case of *County Court v. Demus, supra,* this Court upheld the statutory exemption from taxation for industrial development bonds. In that case the Court said at p. 406:

> "This Court is unanimously of the view that the provisions of this Act are not in violation of Article X, Section 1 of the constitution inasmuch as the factual findings of the legislature in this act as heretofore related are legislative, not juridical, findings and this Court is bound thereby."

The last challenge made by the respondent to *Code,* 8-16-4a is that a municipality's operation of a facility in which a portion of the facility is devoted to private business, violates Sections 9 and 10 of Article III of the *Constitution of West Virginia* and the Fourteenth Amendment to the *Constitution of the United States.* Respondent argues that because such facilities are in competition with private persons providing a similar service, there is a denial of equal protection of the laws and a taking of property for private purposes without due process.

The ability of local governments to engage in a business previously dominated by private enterprise has been firmly established by the courts, particularly where the public welfare is involved. In *Puget Sound Power & Light Company v. City of Seattle,* 291 U.S. 619, 54 S. Ct. 542, 78 L. Ed. 1025 (1933), the Supreme Court considered a challenge by a private power company to a state-authorized city power-plant which not only competed with private enterprise, but also held favored tax status by virtue of local ordinances. The Supreme Court said at page 624, 54 S. Ct. at 545:

> "In conducting the business by state authority the city is exercising a part of the sovereign power of the state which the Constitution has not curtailed. The decisions of this Court leave no doubt that a state may, in the public interest, constitutionally engage in a business commonly carried on by private enterprise, levy a tax to support it, *Green v. Frazier,* 253 U.S. 233; *Jones v. Portland,* 245 U.S. 217, and compete with private interests engaged in a like activity. *Standard Oil Co. v. Lincoln* [aff'd per curiam 275 U.S. 504]; *Madera Water Works v. Madera,* 228 U.S. 454; *Helena Water Works Co. v. Helena,* 195 U.S. 383."

The case of *Chapman v. Housing Authority, supra,* holds that the conferring of a private benefit upon a limited number of individuals to further a predominantly public purpose, does not invalidate the project merely because all similarly situated individuals cannot receive

similar benefits. The Court said in *Chapman,* 121 W.Va. at page 347, 3 S.E.2d at page 515:

"It is said that the city, by furnishing five hundred families, who will be admitted to the dwelling units when completed, services for which the plaintiff and other citizens must pay, will result in a violation of this provision of the Fourteenth Amendment. This Court, however, realizes fully that slums are a great detriment and their clearance and the erection of sanitary houses in their stead will inure to the benefit of all the people of the community. That incidentally five hundred families will be benefited in a slight degree more than the rest of the community does not of itself constitute a denial of equal protection of the laws. Many municipal enterprises, though used by only a part of the people of the community, are, nevertheless, public property, and have been made in the interest of all the people of the community; for example, jails, poor houses, filtration plants, gas plants and public hospitals."

For the reasons set forth in this opinion we find that *Code,* 8-16-4a which authorizes municipalities to establish parking facilities and lease space for private purposes is constitutional on its face, and that the relator has shown a clear legal right to the relief sought. Accordingly a writ of mandamus will issue directing the Honorable Kenneth L. Coghill, Clerk of the City of Charleston, to publish such notices as are required by Resolution No. 228-73.

*Writ granted.*

HADEN, JUSTICE, dissenting:

I respectfully dissent from the views expressed in the majority opinion.

For laudable reasons and accompanied by elaborate legislative findings and declarations of constitutionally valid purposes beneficial to the public, the Legislature adopted West Virginia Code, Chapter 8, Article 16, Section 4a, as amended. This statute delegates to municipalities authorization and means to construct motor vehicle

parking facilities through the issuance of revenue bonds which may be underwritten and amortized by leases of the parking facilities and by leases or sales of the air space over the land appurtenant to the parking facility to private developers and others for "business, commercial or charitable use . . . ."

Like the majority, I have no quarrel with the finding that provision for additional parking facilities within a municipality is a public purpose. That, however, begs the more basic questions.

The statute explicitly delegates the legislative power as follows:

"(b) The governing body or bodies, in its or their discretion, may provide by ordinance or ordinances:

"(1) For the leasing . . . in or on a . . . motor vehicle parking facility for *any* business, commercial or charitable use to such person, for such fair and adequate consideration, for such period or periods of time and upon such other terms and conditions as such body or bodies or the board may agree to . . . ." (Emphasis supplied)

"(2) For the leasing . . . or the selling of air space over a . . . motor vehicle parking facility . . . .", on the same conditions as set forth in subparagraph (1) above. *Code* 1931, 8-16-4a (b) (1) (2), as amended.

The statute also says that the city can accomplish the sale or lease of the property as follows:

"Any such lease may be privately negotiated without any public notice or advertising, and any such sale may be a public sale pursuant to the provisions of section eighteen [§ 18-12-18], article twelve of this chapter or such sale may be privately negotiated, notwithstanding the provisions of said section eighteen." *Code* 1931, 8-16-4a (b) (3), as amended.

I note, as the majority has acknowledged, the statute making the delegation of power to the city is absolutely devoid of standards, conditioning or limiting the city's

right to lease or sell property previously dedicated to a public use, for that which may become a predominately private use.

Relevant to that point, one must also consider the fact that the delegation made to the city in *Code* 1931, 8-16-4a, as amended, is accompanied by the power of eminent domain which also permits the city to acquire private property for the purposes of constructing a municipal parking facility to be leased and sold as indicated in the foregoing *Code* section. *Code* 1931, 8-16-8, as amended.

Thus, for an admittedly valid purpose, the Legislature purports to permit any municipality within the State of West Virginia to do that which the Legislature itself is not permitted to do: Acquire private property through the processes of eminent domain for a public purpose; and contemporaneously, subvert the public purpose to a private purpose, by lease or sale of the acquired public property to private developers for their devotion to predominately private purposes, without limitation whatsoever.

It shocks me that the majority explicitly recognized the unlimited and extralegal delegation made by this statute and then, blithely, held it to be constitutional on its face. But, we are told not to worry. With cleverness and with a guile that is not entirely innocent, the opinion author for the majority prospectively warns any municipality proposing to avail itself of the provisions of this statute that "a parking facility which has as its primary and dominant purpose the conferring of private benefits, with only ancillary public benefits, would be an unconstitutional use of the authority conferred by *Code*, 8-16-4a."

Aside from the fact that this Court is not authorized to issue advisory opinions, it also appears that mandamus is hardly the proper remedy to control hypothetical, and merely prospective, intentions of municipal officers.

The majority then purports to cure the imperfections of the legislation previously acknowledged by unconscionably encroaching upon the doctrine of separation of powers. The Court supplies judicially created standards to the statute so that the otherwise unconstitutional delegation of legislative power will be fleshed out with a set of standards requisite to a complete statute. The following surely represents a blatant example of "judicial legislation:"

> "Therefore, if any given parking facility project is challenged on the constitutional grounds of lack of public purpose a court must look to an expansive definition of public purpose and evaluate the project in terms of (1) the necessity of commercial sale or leasing of space to finance the parking facility; (2) the degree to which the facility will enhance or implement any pre-existing or proposed general plan of urban development and renewal; and (3) the degree to which the proposed project will enhance the State's public policy of encouraging economic development and the expansion of industry and commerce." Neely, J.—majority opinion.

This is followed by a final tongue-in-cheek caveat:

> "Where it appears as a matter of *fact* that a proposed parking authority is merely a disguise for individual profit, a court is entitled to strike down the enterprise." (Emphasis supplied). Neely, J.—majority opinion.

Obviously, the City of Charleston through its prospective bond counsel, would not have brought this statute to court for interpretation were it not for the fact that certain provisions of the Constitution give one pause for reflection before making a substantial investment in the construction of an authorized facility. As aptly expressed by counsel for respondent in his able brief: "It is well known that constitutional provisions directly affect the extent of permissible delegation."

In my opinion, permissible delegation is that which is accompanied by standards adequate to notify the

delegate to proceed without proceeding unlawfully. In the context of lawfulness, no body of law should be more respected than the Constitution, which is the organic and subsisting source document representing the will of the people. Among other things, this document says that the power to legislate reposes solely in the Legislature. W.Va. Const. art. VI, § 1. Secondly, private property may be acquired through governmental processes only for a public purpose. W.Va. Const. art. III, § 9. Third, while the judiciary may approve or disapprove, it may not legislate to supply standards omitted from public policy as declared by the Legislature. W.Va. Const. art. V, § 1; art. VI, § 1; art. VIII, § 1. Where a delegate agency is clothed with the colorable authority to take property for a predominately private purpose under the guise of eminent domain, the invalidity inheres in the grant of authority rather than within the potential act of the delegate. *Hench v. Pritt,* 62 W.Va. 270, 57 S.E. 808, 125 Am.St.R. 966 (1907). Such invalidity, although curable by the delegator of legislative power, cannot be constitutionally remedied by the judiciary. W.Va. Const. art. V, § 1; art. VI, § 1. It is within our power, as courts, pursuant to the limitations of the Separation Clause, to stamp our imprimatur upon that which is complete when it leaves the Legislature, or to sanction or disapprove action previously taken by the executive department. Courts, however, cannot supply the missing legislative standard, nor advise and approve the prospective executive action for which a method of procedure has not been previously authorized by a constitutional grant from the people or a lawful delegation from the Legislature.

For these rather basic reasons, I find it necessary to disagree with the decision of the majority.