WASHINGTON–SUMMERS, INC., a West
Virginia Corporation, Plaintiff,

v.

The CITY OF CHARLESTON, a Munici-
pal Corporation, Defendant.

Civ. A. No. 77–2045 CH.

United States District Court,
S. D. West Virginia,
Charleston Division.

March 31, 1977.

Charles W. Yeager, Steptoe & Johnson, Anthony G. Halkias, Charleston, W. Va., for plaintiff.

W. Warren Upton, Roger A. Wolfe, Jackson, Kelly, Holt & O'Farrell, Charleston, W. Va., for defendant.

## MEMORANDUM ORDER GRANTING SUMMARY JUDGMENT TO DEFENDANT

COPENHAVER, District Judge.

This is an action brought pursuant to 28 U.S.C. §§ 2201, 2202 (1970) for a declaratory judgment wherein plaintiff, Washington-Summers, Inc., seeks an adjudication that W.Va.Code, § 8–16–4a (1976), and Charleston, W.Va., Ordinance No. 1993, as amended (February 8, 1977) of the defendant, City of Charleston, are unconstitutional under the Fourteenth Amendment of the Constitution of the United States. At the time this suit was filed the ordinance was not yet effective. Shortly thereafter, however, the defendant completed the final step necessary to its effective adoption and promptly instituted condemnation proceedings against plaintiff's property in state court. The state proceedings are now pending.

Section 8–16–4a authorizes municipalities, such as the defendant, to lease space in municipally-owned motor vehicle parking facilities to private interests. Plaintiff alleges that § 8–16–4a is unconstitutional in that it sanctions the condemnation of private property for private use without restriction or limitation. Plaintiff further alleges that the ordinance, which authorizes the defendant to acquire plaintiff's property in order to construct a municipal parking building, is similarly unconstitutional in that it provides for the unrestricted leasing of space to private interests. Plaintiff further complains that the proposed taking of its property is unnecessary to any public purpose and that the decision to locate the parking structure on its property is arbitrary, capricious, in bad faith and done primarily to assist certain unnamed private interests.

This case is now before the court upon the respective motions of plaintiff and defendant for summary judgment. The court finds that the statute and ordinance in question are constitutional. All other issues, including the constitutionality of the specific application of the statute and ordinance in this instance, are left to the pending state court proceedings.

### I.

It is clear that the construction and operation of a public parking structure is a valid public purpose sufficient to sustain the taking of private property under the federal constitution. *State ex rel. City of Charleston v. Coghill*, 207 S.E.2d 113 (W.Va.1973); *Wilmington Parking Authority v. Ranken*, 34 Del.Ch. 439, 105 A.2d 614

(1954). It is also clear that a finding of public purpose will not be defeated simply because it confers an ancillary or incidental private benefit. *Fallbrook Irrigation District v. Bradley*, 164 U.S. 112, 161–62, 17 S.Ct. 56, 41 L.Ed. 369 (1896); *Coghill*, 207 S.E.2d at 117. On the other hand, it is equally clear that property cannot be taken by eminent domain for a predominantly private purpose. *Missouri Pac. Ry. Co. v. State of Nebraska*, 164 U.S. 403, 17 S.Ct. 130, 41 L.Ed. 489 (1896); *Phillips v. Foster*, 215 Va. 543, 211 S.E.2d 93 (1975).

The question in this case is whether § 8–16–4a provides an adequate guarantee that a municipality will not be allowed to condemn private property for a predominantly private use. The very same issue was addressed by the West Virginia Supreme Court in *Coghill*. Although that case involved a mandamus action, it was essentially a means of testing the constitutionality of § 8–16–4a prior to preparation of plans and financing for a municipal parking structure. The court found that the statute should be read so as to restrict leasing to private interests to merely ancillary or incidental space within the parking structure. As thus interpreted, the statute was held constitutional. It is argued, however, that the court in *Coghill* was without basis in finding the "incidental" limitation in the statute and, further, that such a limitation is too vague and indefinite.

 It is an axiom of statutory construction that a statute is presumed constitutional and that a reviewing court should endeavor to adopt a construction upholding its validity. *Flemming v. Nestor*, 363 U.S. 603, 617, 80 S.Ct. 1367, 4 L.Ed.2d 1435 (1960). In this connection, the primary versus incidental benefit test is one of long standing, *Kaukauna Water Power Co. v. Green Bay and Mississippi Canal Co.*, 142 U.S. 254, 12 S.Ct. 173, 35 L.Ed. 1004 (1891); *Chapman v. Housing Authority*, 121 W.Va. 319, 3 S.E.2d 502 (1939), and it is reasonable to assume that the legislature intended for it to apply here. In any case, the West Virginia Supreme Court has resolved the question by concluding that the statute authorizes the sale or lease to private interests of ancillary or incidental space within a public parking facility which has as its primary and dominant purpose the conferring of benefits on the public generally.

In so doing, the State, as it may, has construed its statute so as to avoid friction with the Fourteenth Amendment. *Carey v. Sugar et al.*, 425 U.S. 73, 96 S.Ct. 1208, 47 L.Ed.2d 587 (1976). Although the ancillary or incidental space test articulated in *Coghill* cannot be applied with the precision of a computer, there is ample authority suggesting that such a standard is constitutional. In *Kaukauna Water Power Co.*, where a dam was constructed for the public purpose of controlling navigation, it was held that any water power incidentally created could be sold to private persons in order to help defray the costs. Regarding the standard for measuring whether a use was incidental, the Court stated:

> So long as the dam was erected for the *bona fide* purpose of furnishing an adequate supply of water for the canal and was not a colorable device for creating a water power, the agents of the State are entitled to great latitude of discretion in regard to the height of the dam and the head of water to be created; and while the surplus in this case may be unnecessarily large, there does not seem to have been any bad faith or abuse of discretion on the part of those charged with the construction of the improvement. Courts should not scan too jealously their conduct in this connection if there be no reason to doubt that they were animated solely by a desire to promote the public interests, nor can they undertake to measure with nicety the exact amount of water required for the purposes of the public improvement. 142 U.S. at 276, 12 S.Ct. at 179.

Somewhat similarly, in *Hendersonville Light & Power Co. v. Blue Ridge Interurban R. Co.*, 243 U.S. 563, 37 S.Ct. 440, 61 L.Ed. 900 (1917), the condemnation of water rights for the public purpose of supplying power to a state chartered railroad was attacked on the grounds that the plan was a

"covert device for selling the greater part of the power to mills, that this last is a private use, and that the objects being so intermingled the taking must fall." 243 U.S. at 569, 37 S.Ct. at 441. Justice Holmes, in writing for the court, dismissed this argument stating:

We are asked to go behind the finding that the taking was for a public use, on the ground that the charter authorizes the sale of surplus power, that the contemplated works will produce fifty-thousand horse-power and that this, according to the evidence, is much more than will be needed for the railway. But the surplus is a matter of estimate and no reason is shown for our not accepting the findings below. We are in no way warranted in assuming that the sale of surplus power, if there is any, is the real object of the enterprise, or anything more than a possible incident, necessary to prevent waste, of the primary public use. 243 U.S. at 569–570, 37 S.Ct. at 442.

Just as a dam constructed for the purpose of navigation may produce a valuable by-product of water power, so may a public parking garage create commercially desirable space. To insist that the city refrain from leasing this incidental by-product would at the least waste a valuable asset and at the worst require abandonment, as being financially unfeasible, of a necessary public parking project to be located on prime land in the city's central business district. In this context, a number of jurisdictions, in addition to West Virginia, have found it constitutionally permissible for a municipality to lease space in its parking structures or lots to private interests for commercial use. *Wilmington Parking Authority v. Ranken; Gate City Garage v. City of Jacksonville*, 66 So.2d 653 (Fla. 1953); *see also Seligsohn v. Philadelphia Parking Authority*, 412 Pa. 372, 194 A.2d 606 (1963). *Contra, Shizas v. City of Detroit*, 333 Mich. 44, 52 N.W.2d 589 (1952).

▮ Although § 8–16–4a, as construed by the West Virginia Supreme Court, is constitutional on its face, it lends itself to unconstitutional application should private

purpose utilization be allowed to advance beyond the threshold of incidental use. There is, however, adequate means under West Virginia law to assure that this does not occur. W.Va.Code. § 54–2–2 (1966), requires that any petition for the commencement of condemnation proceedings include a statement of "the use to which the estate sought to be taken is intended to be appropriated." Failure to state all the uses may be grounds for denying the petition. *United States v. West Virginia Power Co.*, 33 F.Supp. 756 (S.D.W.Va.1940). W.Va.Code, § 54–2–5 (1966), requires the court to determine that the condemnor has a right to take the property for the purposes stated in the petition prior to considering the question of compensation. This finding is immediately appealable. *W. Va. Bd. of Regents v. Fairmont M. & P. R. R. Co.*, 155 W.Va. 863, 189 S.E.2d 40 (1972). Finally, no entry may be made by the State or any political subdivision until such a finding is made. W.Va.Code, § 54–2–14 (Supp.1976).

Thus, the city prior to acquiring the property by condemnation may be required to submit a plan showing the approximate ratio of public parking to commercial space, together with such further data as should appear requisite. The condemnation court would thereby be enabled to determine whether the ratio is consistent with a finding of public purpose.

Inasmuch as § 8–16–4a has been construed by the state's highest court to restrict private leasing to incidental space, and in view of the availability of adequate means by which the property owner can insist that this test be met prior to condemnation, the statute is found to be constitutional. It follows that the ordinance, which closely parallels the statute, including adoption of the phrase "related incidental space for lease for private . . . uses," is also constitutional.

II.

Having found the statute and ordinance to be constitutional, the question remains as to whether application of those laws to the

plaintiff's property is constitutional in this instance. Other related questions before this court involve plaintiff's allegations that the proposed taking is unnecessary to any public purpose and is arbitrary, capricious, in bad faith and primarily designed to further unnamed private interests.

A federal court, however, is not compelled to exercise its jurisdiction under the Declaratory Judgment Act, 28 U.S.C. §§ 2201, 2202, where an adequate remedy exists in the state court system. *Crawford v. Courtney*, 451 F.2d 489 (4th Cir. 1971). Although Fed.R.Civ.P. 57 specifically provides that the existence of another adequate remedy does not preclude the exercise of jurisdiction, it is clear that a court should carefully consider whether any purpose would be served by assuming jurisdiction. *Fay v. Fitzgerald*, 478 F.2d 181 (2nd Cir. 1973).

It is observed that the state court is also charged with upholding the federal constitution and there is no reason to suggest it will not do so. *Martin v. Creasy*, 360 U.S. 219, 225, 79 S.Ct. 1034, 3 L.Ed.2d 1186 (1959). The plaintiff possesses a complete and adequate remedy to resolve all remaining issues in the pending state court action and, under the circumstances of this case, the plaintiff should be directed to proceed in that tribunal.[1]

Moreover, there is considerable authority which holds that a federal court should not ordinarily intervene in a state eminent domain proceeding. *Louisiana Power & Light Company v. City of Thibodaux*, 360 U.S. 25, 79 S.Ct. 1070, 3 L.Ed.2d 1058 (1959); *Ahrensfeld v. Stephens*, 528 F.2d 193 (7th Cir. 1975); *Crawford v. Courtney; Creel v. City of Atlanta*, 399 F.2d 777 (5th Cir. 1968). Although these cases involved the abstention doctrine, similar considerations are applicable here. *See also, Lynch v. Snepp*, 472 F.2d 769 (4th Cir. 1973).

It is accordingly ORDERED that plaintiff's motion for summary judgment is denied; and it is further

ORDERED that defendant's motion for summary judgment is granted and that this action be dismissed.

1. It should further be noted that it appears that this action was prematurely filed in an effort to anticipate the state court proceeding, a factor which may be considered in declining jurisdiction. *Amerada Petroleum Corporation v. Marshall*, 381 F.2d 661, 663 (5th Cir. 1967); *Aetna Casualty & Surety Co. v. Quarles*, 92 F.2d 321, 324 (4th Cir. 1937). Although the ordinance was adopted on January 3, 1977, it did not become effective until February 8, 1977, at which time a public hearing was held upon due notice, and after which City Council voted to put the ordinance into effect. W.Va.Code, § 8–16–7 (1976). This action was filed on February 1, 1977. On February 28, 1977, state condemnation proceedings commenced.